Richard Bradley STAATS

v.

Noel Elizabeth (Staats) McKINNON.

Court of Appeals of Tennessee,
at Nashville.

Dec. 14, 2005 Session.

May 2, 2006.

Permission to Appeal Denied by
Supreme Court Oct. 16, 2006.

Stanley A. Kweller, Nashville, Tennessee, for the appellant, Noel Elizabeth (Staats) McKinnon.

Helen Sfikas Rogers, Nashville, Tennessee, for the appellee, Richard Bradley Staats.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

This interlocutory appeal involves an interstate custody dispute over a nine-year-old child. The child's mother was designated the primary residential parent when her parents were divorced in 2000 in Florida. In 2002, the father filed a petition requesting the Florida court to change custody. While this petition was pending, the mother remarried, the mother moved to Massachusetts with her new husband and the parties' child, and the father moved to Tennessee. In June 2004, the Florida court granted the father's petition and designated him as the child's primary residential parent. As a result of this order, the child began living with the father in Tennessee and has lived in Tennessee ever since. In 2005, the Florida District Court of Appeal reversed the order changing custody and remanded the case to the Florida trial court for further proceedings. Thereafter, the father filed a petition in the Circuit Court for Davidson County seeking to modify the original Florida order designating the mother as the child's residential parent. The mother responded by filing an emergency petition in the Florida trial court to enforce the original custody order and by entering an appearance in the Tennessee proceeding to contest the Tennessee trial court's subject matter jurisdiction. Following a hearing and two conversations with the Florida trial court, the Tennessee trial court entered orders asserting jurisdiction over the father's modification petition and designating the father as the child's primary resi-

dential parent pending a final disposition of the father's petition. Both the trial court and this court granted the mother's application for a Tenn. R.App. P. 9 interlocutory appeal. We have concluded: (1) that the Florida trial court no longer has exclusive, continuing jurisdiction over the custody of this child because the child and her parents have not lived in Florida since 2003; (2) that Tennessee became the child's home state while she was living with her father during the pendency of the Florida appeal; (3) that the Tennessee trial court was not required to decline to exercise its jurisdiction to modify the original Florida custody decree; and (4) that the father was not required to return the child to her mother in Massachusetts following the reversal of the Florida trial court's change of custody order. Accordingly, we affirm the trial court's assertion of subject matter jurisdiction and remand the case for the consideration of the father's petition to modify custody.

## I.

Noel E. Staats and Richard B. Staats were married in June 1991. Their only child, Sophia Monet Staats, was born in August 1996. Their marriage was dissolved on January 31, 2000 in Panama City, Florida. The Florida decree incorporated a marital settlement agreement in which the parties agreed that they would have joint custody of their daughter, that Ms. Staats would be the primary residential parent, and that Mr. Staats would pay Ms. Staats $380 per month in child support.

In February 2002, Mr. Staats filed a petition in the Florida trial court that had dissolved the parties' marriage seeking a modification of the initial custody determination. He asserted that Ms. Staats had engaged in misconduct that warranted designating him as their daughter's primary residential parent. Ms. Staats moved to dismiss Mr. Staats's petition and filed a counter-petition seeking to increase Mr. Staats's child support. For the next two years, Mr. Staats's modification petition and Ms. Staats's counter-petition languished in the Florida trial court.

In the meantime, Ms. Staats married Robert McKinnon in June 2002, and she and Mr. McKinnon began making plans to move to Massachusetts. Mr. Staats and his parents objected to the move. However, in August 2002, the Florida court permitted Ms. McKinnon,[1] her new husband, and the parties' daughter to move to Massachusetts. Thereafter, Mr. Staats moved to Tennessee.

The Florida trial court entered an order on June 8, 2004 granting Mr. Staats's petition to change custody. The court determined that its initial custody determination should be modified because there had been "many" substantial changes of circumstances since the entry of the divorce decree and that if Ms. McKinnon remained the primary residential parent, she would eventually completely alienate the child from Mr. Staats. Accordingly, the Florida trial court designated Mr. Staats as primary residential parent and granted Ms. McKinnon monthly weekend visitation in Massachusetts.[2] As a result of this order,

1. Ms. Staats changed her surname to "McKinnon" following her marriage in 2002. Accordingly, we will refer to her as "Ms. McKinnon" for the remainder of this opinion.

2. The order did not mention Ms. McKinnon's counter-petition for an increase in Mr.

Staats's child support obligation which was rendered moot by the change in primary residential custody. The court did find, however, that Mr. Staats was not in arrears in his child support payments.

Monet Staats moved to Tennessee on June 21, 2004 to live with her father.

Ms. McKinnon appealed the Florida trial court's June 8, 2004 order to the Florida District Court of Appeal. On March 21, 2005, the appellate court filed an opinion concluding that the Florida trial court had erred by changing physical custody from Ms. McKinnon to Mr. Staats. *McKinnon v. Staats*, 899 So.2d 357 (Fla.Dist.Ct.App. 2005) (*Staats I*). The appellate court found insufficient evidence to support the trial court's finding of a substantial and material change of circumstances and held that the trial court erred by basing its best interests determination on the mere possibility of future parental alienation by Ms. McKinnon. *Staats I*, 899 So.2d at 359–61.

On April 27, 2005, the appellate court denied Mr. Staats's motion for a rehearing, and on May 13, 2005, it issued the mandate remanding the case to the trial court with instructions to conduct "further proceedings, if required." While the appellate court's reversal of the modification judgment breathed new life into Ms. McKinnon's counter-petition for an increase in Mr. Staats's child support obligation, noth-ing in the appellate court's opinion or mandate suggested that there was anything left for the Florida trial court to do with respect to Mr. Staats's underlying petition to modify the initial custody determination.

Mr. Staats could have requested the Florida Supreme Court to review the decision of the Florida District Court of Appeal.[3] However, on May 23, 2005, he filed a new petition in the Circuit Court for Davidson County seeking to modify the Florida trial court's initial custody order. Mr. Staats did not attempt conceal the Florida proceedings,[4] nor did he seek to re-litigate the issues already considered by the Florida courts. Rather, he asserted that the events occurring after June 8, 2004 constituted substantial and material changes of circumstances justifying a modification of the initial Florida custody order that had been filed in January 2000.

Mr. Staats alleged that the Tennessee trial court had modification jurisdiction pursuant to the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[5] which had been enacted in both Tennessee and Florida.[6] He

---

**3.** Fla. R.App. P. 9.120(b) ("The [discretionary] jurisdiction of the supreme court … shall be invoked by filing 2 copies of a notice … with the clerk of the district court of appeal within 30 days of rendition of the order to be reviewed."); Fla. R.App. P. 9.020(i) ("If any timely and authorized motion [for rehearing, clarification, certification, or rehearing en banc] is filed, the order shall not be deemed rendered as to any party until all of the motions are either abandoned or resolved by the filing of a written order.").

**4.** Mr. Staats provided the Tennessee trial court with copies of the January 31, 2000 divorce decree, the June 8, 2004 judgment granting modification of the January 31, 2000 decree, and the Florida District Court of Appeal's March 21, 2005 opinion.

**5.** Unif. Child Custody Jurisdiction & Enforcement Act §§ 101–405, 9 U.L.A. 649 (1999 & Supp.2005).

**6.** Tenn.Code Ann. §§ 36–1–201 to –243 (2005); Fla. Stat. Ann. §§ 61.501 to 61.542 (West 2005). Tennessee and Florida added similar statements of legislative purpose at the beginning of their versions of the UCCJEA, Tenn.Code Ann. § 36–6–202; Fla. Stat. Ann. § 61.502, and Tennessee included two sections directing that the official commentary to the UCCJEA be published along with the statutory text and consulted as evidence of the statute's underlying purposes and policies, Tenn.Code Ann. §§ 36–6–203, –204. Aside from these changes, the Tennessee and Florida versions of the UCCJEA are substantially identical both to each other and to the UCCJEA as originally promulgated. For the reader's convenience, we have provided parallel citations to the Florida version of the UCCJEA and to the UCCJEA itself the first time we refer to a specific provision of the Tennessee version of the UCCJEA in a particular section of this opinion.

asserted that the Florida trial court no longer had exclusive, continuing jurisdiction over the child custody determination because: (1) the first modification proceeding had been terminated; (2) neither the child nor either parent presently resided in Florida; and (3) Tennessee had become the child's "home state" during the pendency of Ms. McKinnon's successful appeal of the Florida modification judgment.

■ In addition, Mr. Staats requested the trial court to enter a temporary restraining order to prevent Ms. McKinnon from removing their child from Tennessee except to exercise standard visitation. The Tennessee trial court, apparently without consulting the Florida trial court,[7] issued a temporary restraining order and set a show cause hearing for June 22, 2005 on Mr. Staats's request for temporary custody while the Tennessee modification proceeding was pending.

Within days, Ms. McKinnon filed an emergency petition in the Florida trial court seeking to enforce the District Court of Appeal's mandate and the January 2000 initial custody order. She also filed papers in the Tennessee trial court challenging the court's jurisdiction to modify the initial Florida custody order and requesting the court to dissolve its temporary restraining order. Meanwhile, on May 27, 2005, Mr. Staats appeared specially in the Florida trial court to challenge the court's jurisdiction over Ms. McKinnon's emergency enforcement petition.[8] The Florida trial court, apparently without consulting the Tennessee trial court, rejected Mr. Staats's challenge to its jurisdiction and directed Mr. Staats and Ms. McKinnon to begin complying immediately with the January 2000 initial custody order designating Ms. McKinnon as the primary residential parent.

On June 22, 2005, the Tennessee trial court conducted a show cause hearing. During this proceeding, the court informed the parties that it had discussed the case with the Florida trial court and that both courts agreed that the Tennessee trial court should exercise temporary jurisdiction over the child. However, the court also stated that it understood that the

7. The record indicates that the Tennessee trial court did not attempt to contact the Florida trial court before entering the temporary restraining order on May 23, 2005. The UCCJEA strongly encourages trial courts in different states to communicate with one another before taking any action which would have the effect of interfering with another state's child custody determination, even temporarily. *See, e.g.*, Tenn.Code Ann. §§ 36–6–213 to –215, –219(d), –221(b), –231; *accord* Fla. Stat. Ann. §§ 61.511 to 61.513, 61.517(4), 61.519(2), 61.530; UCCJEA §§ 110–112, 204(d), 206(b), 307, 9 U.L.A. at 666–69, 677, 680, 693–94. Given the absence of any allegation by Mr. Staats that Ms. McKinnon posed a danger to the child and his willingness to allow Ms. McKinnon to remove the child from the state to exercise standard visitation, the trial court should have at least attempted to contact the Florida court before entering the temporary restraining order which effectively modified the Florida child custody determination for a month until the show cause hearing. *See* Tenn.Code Ann. § 36–6–221 cmt. (noting that an order enjoining parties from enforcing another state's child custody determination "is the equivalent of a temporary modification"); *accord* UCCJEA § 206 cmt., 9 U.L.A. at 681.

8. On the filing of an enforcement petition, the UCCJEA requires the court to issue an order directing the respondent to appear in person with or without the child at a hearing to be held "on the next judicial day after service of the order unless that date is impossible," in which case "the court shall hold the hearing on the first judicial day possible." Tenn.Code Ann. § 36–6–232(c); *accord* Fla. Stat. Ann. § 61.531(3); UCCJEA § 308(c), 9 U.L.A. at 695. The committee that drafted the UCCJEA referred to this procedure as "turbo habeas." Patricia M. Hoff, *The ABC's of the UCCJEA: Interstate Child–Custody Practice Under the New Act*, 32 Fam. L.Q. 267, 293 (1998).

Florida trial court intended to take further action on Ms. McKinnon's counter-petition to increase Mr. Staats's child support. The court informed the parties that it had tentatively decided to exercise jurisdiction over Mr. Staats's petition to modify the initial January 2000 custody order but that it desired to consult with the Florida trial court one more time before entering the order.

On June 29, 2005, the Tennessee trial court filed an order asserting jurisdiction over Mr. Staats's petition to modify the Florida trial court's initial custody order. The court concluded that the Florida trial court no longer had exclusive, continuing jurisdiction to modify the initial custody order and that Tennessee was now the child's "home state" because the child had been living with her father in Tennessee for almost one year and because neither Mr. Staats nor Ms. McKinnon had resided in Florida since 2003. The Tennessee trial court also determined that even if Tennessee was not the child's "home state," it would still exercise jurisdiction over Mr. Staats's modification petition because: (1) no other state could qualify as the child's "home state;" (2) Tennessee had significant connections between to the child and at least one parent; and (3) there was substantial evidence available in Tennessee regarding the child's care, protection, training, and personal relationships.

The Tennessee trial court granted Mr. Staats's request for primary residential custody pending a final ruling on the second modification petition, modified the temporary restraining order to allow Ms. McKinnon to exercise visitation with the child in Massachusetts for the rest of the summer, and reserved the question of further visitation, as well as the question of temporary child support.[9] On July 6, 2005, the court entered a supplemental order documenting another conversation with the Florida trial court and reiterating its decision to assume jurisdiction over Mr. Staats's modification petition.

Ms. McKinnon continued to litigate on two fronts. First, she requested the Tennessee trial court's permission to pursue a Tenn. R.App. P. 9 interlocutory appeal to this court, which was granted. Second, she requested the Florida trial court to enforce its initial January 2000 custody order and parenting schedule.[10] On August 2, 2005, the Florida trial court entered an order stating that it intended to continue exercising "home state" jurisdiction over the custody issue. While the court recognized that neither Ms. McKinnon nor Mr. Staats nor their child resided in Florida, it decided to continue exercising jurisdiction until another state established "home state" jurisdiction. The court decided that Tennessee could not be considered the child's "home state" because her presence in Tennessee became "unlawful" on May 13, 2005 when the Florida District Court of Appeal filed its mandate.

The Florida trial court's August 2, 2005 order granted Ms. McKinnon's motion to enforce the original custody order. The order also declared that the parties' child should be living in Massachusetts with Ms. McKinnon, and, in alarmingly sweeping language, directed "[a]ny and all Sheriffs of the State of Florida and any other authorized law enforcement officer in this State or in any other State" to take the parties' child into custody and return her

---

**9.** On August 25, 2005, the Tennessee trial court entered an agreed order regarding visitation during the remainder of the second modification proceeding.

**10.** The exact date of this filing is unclear from the record on appeal.

to Ms. McKinnon.[11] Mr. Staats appealed the August 2, 2005 order to the Florida District Court of Appeal. On February 27, 2006, the appellate court entered an order affirming the Florida trial court's August 2, 2005 order. *Staats v. McKinnon*, 924 S.2d 82 (Fla.Dist.Ct.App. 2006) (*Staats II*).[12]

## II.

### THE STANDARDS FOR REVIEWING TENN. R. CIV. P. 12.02(1) MOTIONS

This appeal focuses on the jurisdiction of the Tennessee trial court to adjudicate a petition to modify an initial custody order entered by a Florida trial court. Ms. McKinnon filed a Tenn. R. Civ. P. 12.02(1) motion challenging the Tennessee trial court's subject matter jurisdiction. The Tennessee trial court sided with Mr. Staats and denied Ms. McKinnon's motion. Accordingly, we must determine whether the Tennessee trial court properly denied Ms. McKinnon's Tenn. R. Civ. P. 12.02(1) motion.

 The concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or children wherever and with whomever they may be found so that they can be spirited back to the state in which the enforcement proceeding is pending. Such an intrusive and potentially dangerous remedy would go far towards disrupting the interstate comity the UCCJEA was designed to promote.

11. The Florida trial court's August 2, 2005 order is inconsistent with the UCCJEA in two significant respects. First, the UCCJEA authorizes the issuance of a warrant to take a child into custody only when the court finds that "the child is imminently likely to suffer serious physical harm or be removed from this state." Tenn.Code Ann. § 36–6–235(b); *accord* Fla. Stat. Ann. § 61.534(2); UCCJEA § 311(b), 9 U.L.A. at 698. There is nothing in this record to suggest that either parent posed a risk of "serious physical harm" to the child, and the child was obviously not "imminently likely to ... be removed" from Florida because she had already been living with her father in Tennessee for more than a year, and she had lived with her mother in Massachusetts for almost two years before that. As the official commentary to the UCCJEA explains, the purpose of this section was to provide a remedy for "emergency situations where there is a reason to believe that the child will suffer imminent, serious physical harm or be removed from the jurisdiction once the respondent learns that the petitioner has filed an enforcement proceeding." Tenn.Code Ann. § 36–6–235 cmt.; *accord* UCCJEA § 311 cmt., 9 U.L.A. at 698.

Second, the statutory text is clear that the warrants authorized by this section are enforceable only "throughout *this* state." Tenn. Code Ann. § 36–6–235(e) (emphasis added). Accordingly, these warrants should not be directed to law enforcement officials nationwide. The UCCJEA does not provide state trial courts with license to issue nationwide orders to all state and federal law enforcement officials requiring them to snatch up

12. The appellate court noted that Florida no longer had any significant relationship to the parties or their child. *Staats II*, 924 So.2d at 84. However, the court held that the Florida trial court had properly declined to stay or dismiss Ms. McKinnon's enforcement petition because the UCCJEA "clearly confers greater discretion on the enforcing court to proceed with enforcement of a custody order than [it] allows a court in another state in its consideration of a motion to modify." *Staats II*, 924 So.2d at 84. Citing pre-UCCJEA case law, the court concluded: (1) that a court "has inherent continuing jurisdiction over its own custody decrees;" (2) that "[o]nly the court in the state where the initial custody order was entered should evaluate the contacts between the child and the states involved in determining whether the initial state should relinquish jurisdiction;" and (3) that "[p]etitions to modify a decree should be addressed to the court which rendered the original decree even if a second state has become the home state of a child." *Staats II*, 924 So.2d at 84 (citations and internal quotes omitted). Finally, the court concluded that Tennessee law likewise prohibited the Tennessee trial court from asserting jurisdiction over Mr. Staats's petition to modify the original custody order. *Staats II*, 924 So.2d at 86.

controversy. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn.2004); *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn.2003); *First Am. Trust Co. v. Franklin–Murray Dev. Co.*, 59 S.W.3d 135, 140 (Tenn.Ct.App.2001). A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Tennessee Constitution or from legislative acts. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn.1996); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn.Ct.App.1999). The parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. *State ex rel. Dep't of Soc. Servs. v. Wright*, 736 S.W.2d 84, 85 n. 2 (Tenn.1987); *Team Design v. Gottlieb*, 104 S.W.3d 512, 527 (Tenn.Ct.App.2002).

The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn.1994). Thus, when a court's subject matter jurisdiction is questioned, it must first ascertain the nature or gravamen of the case. *Newsome v. White*, No. M2001–03014–COA–R3–CV, 2003 WL 22994288, at *2 (Tenn.Ct.App. Dec.22, 2003) (No Tenn. R.App. P. 11 application filed); *Levy v. Bd. of Zoning Appeals*, No. M1999–00126–COA–R3–CV, 2001 WL 1141351, at *3 (Tenn.Ct.App. Sept.27, 2001) (No Tenn. R.App. P. 11 application filed). The court must then determine whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate cases of that sort. *Newsome v. White*, 2003 WL 22994288, at *2; *Levy v. Bd. of Zoning Appeals*, 2001 WL 1141351, at *3. Both determinations present questions of law which this court

reviews de novo without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn.2000); *Southwest Williamson County Cmty. Ass'n v. Saltsman*, 66 S.W.3d 872, 876 (Tenn.Ct.App. 2001).

Two methods are available to challenge a court's subject matter jurisdiction. The first, and most common, is a "facial" challenge. The second is a "factual" challenge. *Thomas v. Mayfield*, No. M2000–02533–COA–R3–CV, 2004 WL 904080, at *4–5 (Tenn.Ct.App. Apr.27, 2004), *perm. app. denied* (Tenn. Nov. 15, 2004); 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed.2005).

The process used to consider a "facial" challenge to a court's subject matter jurisdiction resembles the method for deciding motions to dismiss for failure to state a claim upon which relief can be granted. *Jetform Corp. v. Unisys Corp.*, 11 F.Supp.2d 788, 789 (E.D.Va.1998); *Avellino v. Herron*, 991 F.Supp. 722, 725 (E.D.Pa.1997).[13] A facial challenge makes war on the complaint itself. It asserts that the complaint, considered from top to bottom, fails to allege facts that show that the court has power to hear the case. *See, e.g., Crawford v. United States Dep't of Justice*, 123 F.Supp.2d 1012, 1013–14 (S.D.Miss.2000). In deciding a facial challenge, the court considers the impugned pleading and nothing else. *Laird v. Ramirez*, 884 F.Supp. 1265, 1272 (N.D.Iowa 1995); *Ensign–Bickford Co. v. ICI Explosives USA, Inc.*, 817 F.Supp. 1018, 1023 (D.Conn.1993). If a complaint attacked on its face competently alleges any facts which, if true, would establish grounds for subject matter jurisdiction, the court must uncritically accept those facts, end its in-

---

**13.** Tenn. R. Civ. P. 12 is substantially identical to Fed.R.Civ.P. 12, making federal court precedents persuasive authority in construing our rule. *Byrd v. Hall*, 847 S.W.2d 208, 211 n. 2 (Tenn.1993); *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 557 (Tenn.1990); *Pacific E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 n. 7 (Tenn.Ct.App.1995).

quiry, and deny the dismissal motion. *Great Lakes Educ. Consultants v. Fed. Emergency Mgmt. Agency,* 582 F.Supp. 193, 194 (W.D.Mich.1984).

 "Factual" challenges to subject matter jurisdiction require a different approach both in the trial court and on appeal. A factual challenge denies that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction. It controverts the complaint's factual allegations regarding jurisdiction, *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583–84 (Fed.Cir.1993), and puts at issue the sufficiency of the evidence to prove facts that would bring the case within the court's subject matter jurisdiction, *Ensign–Bickford Co. v. ICI Explosives USA, Inc.,* 817 F.Supp. at 1023. A factual challenge to subject matter jurisdiction creates "genuine issues as to material fact," but it does not require the court to convert the motion into one for summary judgment. *Chenault v. Walker,* 36 S.W.3d 45, 55–56 (Tenn.2001).[14] Instead, the court must resolve these factual issues, at least preliminarily. *Edick v. Poznanski,* 6 F.Supp.2d 666, 668 (W.D.Mich.1998); *Malkin v. United States,* 3 F.Supp.2d 493, 497 (D.N.J.1998). The court must "determine whether the evidence in favor of finding jurisdiction is sufficient to allow the case to proceed." *Chenault v. Walker,* 36 S.W.3d at 56.

 In assessing factual challenges to subject matter jurisdiction at the motion to dismiss stage, a court must keep in mind that the plaintiff bears the ultimate burden of proving facts establishing the court's jurisdiction over the case. *Chenault v. Walker,* 36 S.W.3d at 56; *Wilson v. Sentence Info. Servs.,* No. M1998–00939–COA–R3–CV, 2001 WL 422966, at *5 (Tenn.Ct.App. Apr.26, 2001) (No Tenn. R.App. P. 11 application filed). If a defendant has filed affidavits or other competent evidentiary materials challenging the plaintiff's jurisdictional allegations, the plaintiff may not rely on the allegations of the complaint alone but instead must present evidence by affidavit or otherwise that makes out a prima facie showing of facts establishing jurisdiction. Tenn. R. Civ. P. 43.02; *Chenault v. Walker,* 36 S.W.3d at 56. The trial court will "take as true the allegations of the nonmoving party and resolve all factual disputes in its favor ... [without crediting] conclusory allegations or draw[ing] farfetched inferences." *Chenault v. Walker,* 36 S.W.3d at 56 (citations omitted); *accord Wilson v. Sentence Info. Servs.,* 2001 WL 422966, at *5. However, the court's initial resolution of the factual issues relating to jurisdiction is not final and conclusive. As the Tennessee Supreme Court has explained, the court does "not make any finding as to whether [the plaintiff's] version of events is, in fact, correct. That will be for a jury to decide

**14.** There is no analogous "factual" challenge to a complaint for failure to state a claim upon which relief can be granted under Tenn. R. Civ. P. 12.02(6). If either or both parties submit evidentiary materials outside the pleadings in support of or in opposition to a Tenn. R. Civ. P. 12.02(6) motion and the trial court decides to consider these materials, the trial court must convert the motion to dismiss to a motion for summary judgment, *Pacific E. Corp. v. Gulf Life Holding Co.,* 902 S.W.2d at 952, and notify the parties that it has made

the conversion, *Teaster v. Tenn. Dep't of Corr.,* No. 01A01–9608–CH–00358, 1998 WL 195963, at *3–4 (Tenn.Ct.App. Apr.24, 1998) (No Tenn. R.App. P. 11 application filed). Once a motion to dismiss has been converted to a motion for summary judgment, the trial court must deny the motion if there exists any genuine dispute about the material facts of the case. *Byrd v. Hall,* 847 S.W.2d at 211; *Pate v. Serv. Merch. Co.,* 959 S.W.2d 569, 573 (Tenn.Ct.App.1996).

if the case goes to trial." *Chenault v. Walker*, 36 S.W.3d at 56.

■ It is undisputed that when Mr. Staats filed his Tennessee modification petition on May 23, 2005, neither the child nor the parents were living in Florida. In addition, the parties agree that the child had been living with Mr. Staats in Tennessee during the eleven-month period between the entry of the Florida trial court's modification judgment on June 8, 2004 and the issuance of the Florida appellate court's mandate on May 13, 2005 reversing the modification judgment. The jurisdictional dispute stems solely from the parties' disagreement regarding the legal effect of these undisputed facts which Mr. Staats pled in his Tennessee change of custody petition. Accordingly, we must analyze Ms. McKinnon's challenge as a facial rather than a factual attack on the trial court's subject matter jurisdiction under the UCCJEA.

## III.

### THE REASONS FOR THE ENACTMENT OF THE UCCJEA

The UCCJEA is a detailed jurisdictional statute. Promulgated in 1997 by the National Conference of Commissioners on Uniform State Laws, it establishes standards for the initial entry of child custody determinations that will be entitled to full faith and credit in all fifty states as a matter of federal law,[15] specifies the circumstances under which a state court can modify another state's child custody determination,[16] and provides expedited procedures for the enforcement of both initial and modified child custody determinations.[17] The UCCJEA's jurisdictional standards for the initial entry and modification of child custody determinations evolved out of an earlier uniform act and a federal full faith and credit statute.

The UCCJEA was designed as a replacement for the Uniform Child Custody Jurisdiction Act (UCCJA).[18] Edward S. Snyder & Laura W. Morgan, *Domestic Violence Ten Years Later*, 19 J. AM. ACAD. MATRIM. LAW. 33, 45 n. 56 (2004). Promulgated in 1968 in an effort "to bring order out of the chaos that once marked interstate custody disputes when the courts of different states claimed authority to issue contradictory custody orders," *Yurgel v. Yurgel*, 572 So.2d 1327, 1329–30 (Fla.1990), the UCCJA required states to enforce child custody determinations by other states made in compliance with the jurisdictional standards of the Act in the same manner as they would enforce their own courts' child custody determinations.[19] The UCCJA established four alternative bases for exercising subject matter jurisdiction to make an initial child custody determination or to modify a previous determination: (1) "home state" jurisdiction; (2) significant connection/substantial evi-

**15.** UCCJEA prefatory note, 9 U.L.A. at 650–51; D. Marianne Blair, *International Application of the UCCJEA: Scrutinizing the Escape Clause*, 38 FAM. L.Q. 547, 560 (2004).

**16.** Tenn.Code Ann. §§ 36–6–217 to –218, *accord* Fla. Stat. Ann. § 61.515 to 61.516; UCCJEA §§ 202–203, 9 U.L.A. at 673–74, 676.

**17.** Tenn.Code Ann. §§ 36–6–226 to –241, *accord* Fla. Stat. Ann. §§ 61.524 to 61.540; UCCJEA §§ 301–317, 9 U.L.A. at 689–703.

**18.** Unif. Child Custody Jurisdiction Act §§ 1–28, 9 U.L.A. 261 (1999).

**19.** UCCJA §§ 13, 15, 9 U.L.A. at 559, 616; *see* Kelly Gaines Stoner, *The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA)—a Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA)*, 5 N.D. L.Rev. 301, 301 (noting that the UCCJA "was created to end the interstate custody jurisdictional tug-of-war between states") (*Metamorphosis*).

dence jurisdiction; (3) inconvenient forum jurisdiction; and (4) vacuum jurisdiction.[20] The UCCJA also provided for emergency jurisdiction if a child was physically present in a state and either the child had been abandoned or the exercise of jurisdiction was necessary in an emergency to protect the child from actual or threatened mistreatment or abuse.[21]

By 1983, all fifty states had enacted some version of the UCCJA.[22] Unfortunately, state legislatures made significant changes to the UCCJA before adopting it, and the imprecision in the language and structure of the various states' versions of the UCCJA generated conflicting state court interpretations on a number of important questions.[23] As a result, the goal of seamless enforcement of child custody determinations across state lines remained unattained.

In 1980, Congress added an additional layer of complexity when it exercised its authority under the Full Faith and Credit Clause[24] and other constitutional provi-sions to enact the Parental Kidnapping Prevention Act of 1980 (PKPA).[25] The PKPA incorporated the UCCJA's four basic tests for the exercise of subject matter jurisdiction, as well as a provision for emergency jurisdiction, and required states to give full faith and credit to child custody determinations that complied with these standards.[26] Thus, after the enactment of the PKPA, all fifty states were required, as a matter of federal law, to enforce and not modify other states' child custody determinations if they complied with the jurisdictional standards of the UCCJA and the PKPA.[27]

However, the PKPA deviated from the UCCJA in several important respects. First, the PKPA prioritized the UCCJA's four basic tests for subject matter jurisdiction. 28 U.S.C.A. § 1738A(c)(2)(A)-(B), (D).[28] Thus, under the PKPA, "home state" jurisdiction trumps "significant connection/substantial evidence" jurisdiction, "significant connection/substantial evidence" jurisdiction trumps "inconvenient

---

**20.** UCCJA § 3(a)(1)-(2), (4), 9 U.L.A. at 307–08.

**21.** UCCJA § 3(a)(3), 9 U.L.A. at 307.

**22.** Russell M. Coombs, *Child Custody and Visitation by Non–Parents Under the New Uniform Child Custody Jurisdiction and Enforcement Act: A Rerun of Seize-and-Run*, 16 J. Am. Acad. Matrim. Law. 1, 39 (1999); Kimberly H. Harris, Note, *Interstate Child Custody Disputes: A Practical Guide for Tennessee Attorneys on the Law of Jurisdiction*, 24 Mem. St. U.L.Rev. 533, 533 (1994).

**23.** UCCJEA prefatory note, 9 U.L.A. at 650; David Carl Minneman, Annotation, *Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act*, 100 A.L.R.5th 1, 14 (2002) (*Construction and Operation of UCCJEA*).

**24.** The Full Faith and Credit Clause requires that "Full Faith and Credit ... be given in each State to the public Acts, Records, and judicial Proceedings of every other State" but vests Congress with the authority "by general Laws" to "prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1.

**25.** Pub.L. No. 96–611, §§ 6–10, 94 Stat. 3566, 3568–73 (1980) (codified as amended at 28 U.S.C.A. § 1738A (West 1994 & Supp.2005), 42 U.S.C.A. §§ 654–55, 663 (West 2003)).

**26.** 28 U.S.C.A. § 1738A(a), (c)(2)(A)-(D).

**27.** 28 U.S.C.A. § 1738A(a); David Carl Minneman, *Recognition and Enforcement of Out-of-State Custody Decree Under § 13 of the Uniform Child Custody Jurisdiction Act (UCCJA) or the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A(a)*, 40 A.L.R.5th 227, 259 (1996 & Supp.2005).

**28.** Symposium, *Women, Children and Domestic Violence: Current Tensions and Emerging Issues*, 27 Fordham Urb. L.J. 567, 742 (2000).

forum jurisdiction," and so forth.[29] Emergency jurisdiction remains a special type of jurisdiction that operates outside of, or as an adjunct to, the hierarchical structure of the four basic tests for subject matter jurisdiction.

The PKPA also significantly altered the analysis for modification jurisdiction. The UCCJA applied the same basic jurisdictional tests to both the initial entry and the modification of child custody determinations. UCCJA §§ 3(a), 14(a), 9 U.L.A. at 307, 580. The PKPA added the concept of "continuing jurisdiction," 28 U.S.C.A. § 1738A(c)(2)(E), (d), and provided that once a state had entered or modified a child custody determination in compliance with the statute's jurisdictional requirements, its jurisdiction would "continue[ ] as long as ... such State remains the residence of the child or of any contestant," 28 U.S.C.A. § 1738A(d). The PKPA prohibited courts from modifying another state's child custody determination if the other state had continuing jurisdiction over the determination and had not declined to exercise it. 28 U.S.C.A. § 1738A(g)-(h). Thus, while "home state" jurisdiction was at the top of the jurisdictional hierarchy under the UCCJA, under the PKPA, continuing jurisdiction trumped "home state" jurisdiction.

The prioritization of the four basic jurisdictional tests and the addition of the concept of continuing jurisdiction in the modification context created a gap between the jurisdictional standards of the UCCJA and the PKPA. As a result, child custody determinations made in compliance with the UCCJA were usually, but not always, entitled to full faith and credit—i.e., enforcement and non-modification—in all fifty states as a matter of federal law under the PKPA. *Thompson v. Thompson,* 484 U.S. 174, 175–77, 180–87, 108 S.Ct. 513, 514–20, 98 L.Ed.2d 512 (1988) (examining in detail the relationship between the Full Faith and Credit Clause, the PKPA, and the UCCJA). The differences between the uniform act and the federal statute spawned numerous jurisdictional clashes that often resulted in the creation of conflicting case law as the courts struggled to parse the fine distinctions between the jurisdictional requirements of the PKPA and the various state versions of the UCCJA. *Metamorphosis,* 75 N.D. L.Rev. at 305.[30] Thus, one of the primary goals of the UCCJEA was to eliminate the friction between the jurisdictional analysis of the PKPA and the uniform act by incorporating clarified versions of the PKPA's prioritized four-part hierarchy for subject matter jurisdiction[31] and the concept of

**29.** Deborah M. Goelman, *Shelter from the Storm: Using Jurisdictional Statutes to Protect Victims of Domestic Violence After the Violence Against Women Act of 2000,* 13 Colum. J. Gender & L. 101, 144–45 (2004); Jon D. Levy, *Transcending Borders in Child Custody Litigation: An Introduction to the Uniform Child Custody Jurisdiction and Enforcement Act in Maine,* 15 Me. B.J. 78, 78 (2000).

**30.** As the official commentary to the UCCJEA notes, the relationship between the UCCJA and the PKPA "became 'technical enough to delight a medieval property lawyer.'" UCCJEA prefatory note, 9 U.L.A. at 650 (quoting Homer H. Clark, Domestic Relations § 12.5, at 494 (2d ed.1988)).

**31.** The drafters of the UCCJEA also incorporated the PKPA provision regarding temporary, emergency jurisdiction but made it into a separate section and revised the statutory text. Tenn.Code Ann. § 36–6–219; *accord* Fla. Stat. Ann. § 61.517; UCCJEA § 204, 9 U.L.A. at 676–77. The changes were designed to make it clear that emergency jurisdiction is inherently temporary in nature and does not, as a general rule, authorize courts to make permanent child custody decisions. Tenn.Code Ann. § 36–6–219 cmt.; *accord* UCCJEA § 204 cmt., 9 U.L.A. at 677–78.

"continuing jurisdiction." [32]

However, it would be a mistake to rely heavily on prior case law interpreting the UCCJA and the PKPA in construing the provisions of the UCCJEA. Another primary goal of the UCCJEA was to sweep away the enormous body of conflicting decisions that had accreted over the past thirty years under the UCCJA by streamlining the language and structure of the underlying uniform statute.[33] Thus, while the UCCJEA retained the central concepts of the UCCJA and the PKPA, it substantially revised and clarified both the statutory text and the official commentary with the goal of allowing the courts to develop a new and truly uniform body of decisional law to govern interstate child custody disputes.[34] Accordingly, the courts must avoid a reflexive reliance on pre-UCCJEA case law in interpreting even quite similar provisions of the UCCJEA in order to prevent the inadvertent reincorporation of the defects and failings of the UCCJA into the new uniform act.

## IV.

### MODIFICATION JURISDICTION UNDER THE UCCJEA

Ms. McKinnon challenges the Tennessee trial court's assertion of subject matter jurisdiction over Mr. Staats's modification petition on several grounds. First, she argues that Florida has exclusive, continuing jurisdiction under the UCCJEA and that only a Florida court can determine that Florida has lost its exclusive, continuing jurisdiction. Second, she argues that Tennessee would not have "home state" jurisdiction to make an initial custody determination under the present circumstances and therefore lacks jurisdiction to modify the Florida custody determination. Third, she argues that the ongoing Florida proceeding and Mr. Staats's failure to send the child to her in Massachusetts immediately after the issuance of the mandate by the Florida District Court of Appeal on May 13, 2005 preclude the Tennessee court from exercising modification jurisdiction. The UCCJEA is the exclusive source for the ground rules for exercising jurisdiction to modify another state's child custody determination. Tenn.Code Ann. § 36-6-218.[35] Accordingly, we turn first to an examination of the UCCJEA.

Under the UCCJEA, a court confronted with a petition to modify another state's child custody determination must undertake a three-part threshold jurisdictional analysis. First, the court must decide whether the state that made the initial custody determination retains exclusive, continuing jurisdiction. Tenn.Code Ann. § 36-6-218(1)-(2). Second, the court must decide whether it would have jurisdiction

32. The UCCJEA substitutes the phrase "exclusive, continuing jurisdiction" for the PKPA's term "continuing jurisdiction." Tenn.Code Ann. §§ 36-6-217(a), -218(1).

33. UCCJEA prefatory note, 9 U.L.A. at 650 (stating that one of the primary rationales for drafting the UCCJEA was to "eliminate the inconsistent state interpretations" that had arisen under the UCCJA); *Construction and Operation of UCCJEA*, 100 A.L.R.5TH at 14-15.

34. UCCJEA prefatory note, 9 U.L.A. at 650; *see also* Tenn.Code Ann. § 36-6-242 ("In applying and construing this uniform act, con-

sideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."); Fla. Stat. Ann. § 61.541; UCCJEA § 401, 9 U.L.A. at 705.

35. *Accord* Fla. Stat. Ann. § 61.516; UCCJEA § 203, 9 U.L.A. at 676. *See also* Tenn.Code Ann. § 36-6-216(b) (stating that the UCCJEA provides "the exclusive jurisdictional basis for making a child-custody determination by a court of this state"); *accord* Fla. Stat. Ann. § 61.514(2); UCCJEA § 201(b), 9 U.L.A. at 671.

to make an initial custody determination under the present circumstances. Tenn. Code Ann. § 36–6–218. The court has subject matter jurisdiction to modify the other state's child custody determination only if the other state has lost its exclusive, continuing jurisdiction or declined to exercise it and the court of the new state would have jurisdiction to make an initial custody determination under the present circumstances. Once a court determines that it has subject matter jurisdiction under the first two steps of the jurisdictional analysis, it must then proceed to the third step and determine whether it may or must decline to exercise its modification jurisdiction on one of the three grounds specified in the UCCJEA. Tenn.Code Ann. §§ 36–6–221 to –223.[36]

#### A.

##### THE FLORIDA TRIAL COURT'S EXCLUSIVE, CONTINUING JURISDICTION

Ms. McKinnon contends that Florida has exclusive, continuing jurisdiction over the child custody determination. A state that has made or modified a child custody determination in accordance with the UCCJEA's jurisdictional requirements retains

exclusive, continuing jurisdiction over the determination until one of two things occurs. First, a state loses exclusive, continuing jurisdiction if a court of that state determines that neither the child nor the child and at least one parent or person acting as a parent[37] continues to have a significant connection with the state and that substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in the state. Tenn.Code Ann. § 36–6–217(a)(1), –218(1).[38] Second, a state loses exclusive, continuing jurisdiction if a court of any state determines that "the child, the child's parents, and any person acting as a parent do not presently reside" in the state. Tenn.Code Ann. §§ 36–6–217(a)(2), –218(2).[39]

The Florida District Court of Appeal recently concluded that "the record is clear that the child and her parents do not have significant contacts with the state of Florida." *Staats II*, 924 So.2d at 84. Moreover, the Florida trial court acknowledged in its August 2, 2005 order that both Mr. Staats and Ms. McKinnon had moved away from Florida. Jurisdiction attaches

**36.** *Accord* Fla. Stat. Ann. § 61.519 to 61.521; UCCJEA §§ 206–208, 9 U.L.A. at 680–84.

**37.** The UCCJEA defines a "Person acting as a parent" as someone other than a parent who "[h]as ... or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding" and "[h]as been awarded legal custody by a court or claims a right to legal custody under the law of this state." Tenn.Code Ann. § 36–6–205(13)(A)–(B); *accord* Fla. Stat. Ann. § 61.503(13)(a)-(b); UCCJEA § 102(13)(A)-(B), 9 U.L.A. at 658–59.

**38.** *Accord* Fla. Stat. Ann. § 61.515(1)(a), 61.516(1); UCCJEA §§ 202(a)(1), 203(1), 9 U.L.A. at 673, 676. In other words, as long

as one parent or person acting as a parent continues to live in the state, the court retains jurisdiction unless the relationship between that person and the child has become so attenuated that the court could no longer find significant connections and substantial evidence. Tenn.Code Ann. § 36–6–217 cmt.; *accord* UCCJEA § 202 cmt., 9 U.L.A. at 674; *cf.* Tenn.Code Ann. § 36–6–216(a)(2)(A)–(B); *accord* Fla. Stat. Ann. § 61.514(1)(b); UCCJEA § 201(a)(2), 9 U.L.A. at 673.

**39.** Thus, unless a modification proceeding has been commenced in the state that made or modified the child custody determination, "when the child, the parents, and all persons acting as parents physically leave the state to live elsewhere, the exclusive, continuing jurisdiction ceases." Tenn.Code Ann. § 36–6–217 cmt.

at the commencement of a proceeding, Tenn.Code Ann. § 36–6–217 cmt., and the UCCJEA defines "[c]ommencement" as "the filing of the first pleading in a proceeding," Tenn.Code Ann. § 36–6–205(5). When Mr. Staats commenced the Tennessee modification proceeding by filing his petition on May 23, 2005, the Florida courts had not yet found that neither the child nor the child and at least one parent had a significant connection with Florida and that substantial evidence concerning the child's care, protection, training, and personal relationships was no longer available in Florida. Thus, Florida's exclusive, continuing jurisdiction had not terminated under the first criterion set forth in Tenn. Code Ann. § 36–6–217(a)(1).

■ However, the second criterion for the termination of exclusive, continuing jurisdiction is satisfied as long as "the child, the child's parents, and any person acting as a parent do not presently reside" in the state. Tenn.Code Ann. §§ 36–6–217(a)(2), –218(2). Determining where an individual "presently reside[s]" does not involve a technical inquiry into the individual's legal domicile under state law. Tenn. Code Ann. § 36–6–217 cmt. Rather, the sole question is whether the relevant individuals "continue to actually live within the state" or have "physically le[ft] the state to live elsewhere." Tenn.Code Ann. § 36–6–217 cmt. It is undisputed that by the time Mr. Staats filed his Tennessee modification petition on May 23, 2005, it had been more than eleven months since the child had actually lived in Florida, and it had been several years since either Mr. Staats or Ms. McKinnon had lived there. Given these undisputed facts, the trial court properly concluded that under the UCCJEA, Florida's exclusive, continuing jurisdiction over the child custody determination had terminated.

■ Ms. McKinnon insists that under the UCCJEA, only a Florida court could determine that Florida no longer has exclusive, continuing jurisdiction. This argument cannot survive even a cursory review of the UCCJEA's text. The UCCJEA states clearly that exclusive, continuing jurisdiction terminates if a "court of this state *or a court of another state* determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state." Tenn.Code Ann. § 36–6–217(a)(2) (emphasis added). In another section, the UCCJEA provides that a court "may not modify a child-custody determination made by a court of another state *unless* . . . [a] court of this state *or a court of the other state* determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state." Tenn. Code Ann. § 36–6–218(2) (emphasis added).

If the statutory text were not clear enough, the official comments leave no doubt as to the legislative intent behind these two sections. The official comment to the first section provides as follows:

> If the child, the parents, and all persons acting as parents have all left the state which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in state B, as well as a court in state A, can decide that state A has lost exclusive, continuing jurisdiction.

Tenn.Code Ann. § 36–6–217 cmt. The official comment to the second section puts the point even more forcefully:

> The modification state is not authorized to determine that the original decree state has lost its jurisdiction. The only exception is when the child, the child's parents, and any person acting as a parent do not presently reside in the other

state. *In other words, a court of the modification state can determine that all parties have moved away from the original state.*

Tenn.Code Ann. § 36–6–218 cmt. (emphasis added).[40]

Ms. McKinnon's argument that only a Florida court can determine that Florida has lost exclusive, continuing jurisdiction over the child custody determination appears to rest solely on this court's statement that the UCCJEA "does not authorize a Tennessee court to determine that the court of another state no longer has continuing, exclusive jurisdiction." *Cliburn v. Bergeron*, No. M2001–03157–COA–R3–CV, 2002 WL 31890868, at *10 (Tenn. Ct.App. Dec. 31, 2002) (No Tenn. R.App. P. 11 application filed). Ms. McKinnon has taken this statement out of context.

■■■ *Cliburn v. Bergeron* is distinguishable from this case on two grounds. First, in *Cliburn v. Bergeron*, the child's father was still residing in the state where the initial custody order was entered when the mother filed her modification petition in Tennessee. Second, the statement cited by Ms. McKinnon refers only to the first criterion for termination of exclusive, continuing jurisdiction, i.e., a state's loss of significant contacts with the relevant parties and the absence of substantial evidence in the

state. Tenn.Code Ann. § 36–6–217(a). In *Cliburn v. Bergeron*, we had no occasion to consider, much less decide, whether only a court of the state that made or modified the custody determination can determine that the state has lost exclusive, continuing jurisdiction as a result of the departure of all the relevant parties from the state.[41] Accordingly, Ms. McKinnon's argument that under the UCCJEA, only a Florida court could determine that Florida has lost its exclusive, continuing jurisdiction over the child custody determination is meritless.

## B.

### THE TENNESSEE TRIAL COURT'S JURISDICTION TO MAKE AN INITIAL CUSTODY DETERMINATION

Ms. McKinnon contends that the Tennessee trial court erred by concluding that Tennessee has "home state" jurisdiction to make a custody determination under the present circumstances.[42] Home state jurisdiction exists if a state is the child's "home state" on the date the child custody proceeding is commenced or was the child's "home state" at any point within the past six months and the child is absent from the state but at least one parent or person acting as a parent continues to live there. Tenn.Code Ann. § 36–6–216(a)(1).[43]

---

**40.** *Accord* UCCJEA § 203 cmt., 9 U.L.A. at 676.

**41.** It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court. *Shousha v. Matthews Drivurself Serv., Inc.*, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (Tenn.1962) ("It is familiar law that a decision is authority for the point or points decided, and nothing more...."); *Glanton v. Lord*, 183 S.W.3d 391, 398 (Tenn.Ct.App. 2005).

**42.** Ms. McKinnon also takes issue with the trial court's alternative finding that even if

Tennessee would not have home state jurisdiction under the present circumstances, it would still have modification jurisdiction under the significant contacts/substantial evidence test. Given our conclusion that the trial court correctly determined that Tennessee would have home state jurisdiction to make an initial custody determination, we need not address Ms. McKinnon's challenge to the trial court's alternative finding under the significant connections/substantial evidence test.

**43.** *Accord* Fla. Stat. Ann. § 61.514(1)(a); UCCJEA § 201(a)(1), 9 U.L.A. at 671.

The UCCJEA explains that the term " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding" or, if the child is less than six months old, "the state in which the child lived from birth with any of the persons mentioned." Tenn.Code Ann. § 36–6–205(7).[44]

■ It is undisputed that when Mr. Staats filed his Tennessee modification petition on May 23, 2005, the child had been living with him in Tennessee for more than six consecutive months. The child visited Ms. McKinnon in Massachusetts during this time, but temporary absences from a state do not restart the clock in calculating the consecutive six-month period necessary to establish a new home state. Tenn. Code Ann. § 36–6–205(7). Thus, under the plain language of the UCCJEA, Tennessee was the child's home state when Mr. Staats filed the modification petition. Accordingly, the trial court properly concluded that Tennessee would have home state jurisdiction to make an initial custody determination under the present circumstances.

■ Ms. McKinnon seeks to avoid the plain import of the statutory text by pointing to this court's statement in *Boyd v. Boyd*, 653 S.W.2d 732, 738 (Tenn.Ct.App. 1983), that "[i]t is clear that the period during which a child has resided in this state pending resolution of a custody dispute may not be considered in reckoning the time necessary to establish 'home state' jurisdiction." Ms. McKinnon argues

that under *Boyd v. Boyd,* the eleven months between the entry of the Florida modification judgment on June 8, 2004 and the reversal of that judgment on May 13, 2005 cannot be counted towards the consecutive six-month period necessary to establish Tennessee as the child's home state. Ms. McKinnon also cites two other pre-UCCJEA cases, as well as one post-UCCJEA case, that followed *Boyd v. Boyd.*[45]

*Boyd v. Boyd, Klindt v. Klindt,* and *Sherrell v. Sherrell* were all decided prior to the General Assembly's adoption of the UCCJEA in 1999. Moreover, the only post-UCCJEA case cited by Ms. McKinnon simply restated the rule of *Boyd v. Boyd* without examining the impact of the General Assembly's enactment of the UCCJEA on the precedential value of the decision in *Boyd v. Boyd.* As noted above, the courts should be especially hesitant to rely on pre-UCCJEA case law in construing the UCCJEA because of the revised language and jurisdictional analysis of the UCCJEA and the risk of inadvertently reincorporating the defects and failings of the UCCJA into the UCCJEA under the guise of statutory interpretation.

The pre-UCCJEA rule advocated by Ms. McKinnon conflicts not only with the plain language of the statute, but also with the official commentary to the UCCJEA. The comment section titled "Home State Jurisdiction" expressly states that under the UCCJEA, as opposed to the UCCJA, "it is no longer necessary to determine why the child has been removed" to another state in order to decide whether the new state has acquired home state juris-

---

44. *Accord* Fla. Stat. Ann. § 61.503(7); UC-CJEA § 102(7), 9 U.L.A. at 658.

45. *P.E.K. v. J.M.,* No. M2001–02190–COA–R3–CV, 2002 WL 1869416, at *7 (Tenn.Ct. App. Aug.15, 2002) (No Tenn. R.App. P. 11 application filed); *Sherrell v. Sherrell,* No. 01A01–9703–CH–00131, 1998 WL 57528, at *2 (Tenn.Ct.App. Feb.13, 1998) (No Tenn. R.App. P. 11 application filed); *Klindt v. Klindt,* No. 01A01–9606–CH–00250, 1997 WL 83668, at *3 (Tenn.Ct.App. Feb.28, 1997) (No Tenn. R.App. P. 11 application filed).

diction to modify the initial custody determination. Tenn.Code Ann. § 36–6–216 cmt.[46] In other words, under the UCCJEA, the existence of home state jurisdiction, like the determination of where a person "presently reside[s]" for purposes of exclusive, continuing jurisdiction, depends on a purely factual inquiry into where the child has actually been living. In light of the plain language of the UCCJEA, the official commentary to the statutory text, and the dangers inherent in relying on pre-UCCJEA precedents to interpret the UCCJEA, we conclude that the rule announced in *Boyd v. Boyd,* and embraced in *Klindt v. Klindt, Sherrell v. Sherrell,* and *P.E.K. v. J.M.* has no continuing vitality following the enactment of the UCCJEA.

## C.

### The Tennessee Trial Court's Refusal to Decline to Exercise Its Modification Jurisdiction

As a final matter, Ms. McKinnon contends that the Tennessee trial court lacks subject matter jurisdiction over Mr. Staats's modification petition because of the ongoing enforcement proceeding in Florida and because of Mr. Staats's failure to return the child to her in Massachusetts immediately following the reversal of the Florida modification judgment. However, under the UCCJEA, these facts do not implicate the existence of subject matter jurisdiction in the first instance. Rather,

they raise questions about whether the trial court was permitted or even required to decline to exercise its modification jurisdiction under the UCCJEA. As explained above, a court's conclusion that it has subject matter jurisdiction to modify another state's child custody determination does not end the threshold jurisdictional analysis. The court must also determine whether it may or must decline to exercise its modification jurisdiction.

### 1.

The UCCJEA prohibits a court from exercising its jurisdiction to modify another state's child custody determination if a child custody proceeding has already been commenced in another state and has not been stayed or terminated. Tenn.Code Ann. § 36–6–221(a).[47] The bar applies only if the other state's jurisdiction conforms substantially to the jurisdictional requirements of the UCCJEA. Tenn.Code Ann. § 36–6–221(a). The modification court is required to contact the other court and must dismiss the modification petition unless the other court determines that the modification court is a more convenient forum for resolving the custody dispute. Tenn.Code Ann. § 36–6–221(b).

However, this provision does not apply if the previously commenced proceeding is an enforcement proceeding. Enforcement proceedings are expressly excluded from the statutory definition of a "[c]hild custody proceeding."[48] The UCCJEA contains

---

**46.** *Accord* UCCJEA § 201 cmt., 9 U.L.A. at 672.

**47.** *Accord* Fla. Stat. Ann. § 61.519(1); UCCJEA § 206(a), 9 U.L.A. at 680.

**48.** The definitional section provides as follows:

"Child custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child

is an issue. "Child custody proceeding" includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. *"Child custody proceeding" does not include a proceeding involving* juvenile delinquency, contractual emancipation, or *enforcement* under part 3 of this chapter.

separate provisions governing simultaneous modification and enforcement proceedings, the first directed primarily to the modification court, Tenn.Code Ann. § 36–6–221(c), and the second directed primarily to the enforcement court, Tenn.Code Ann. § 36–6–231.[49]

The simultaneous proceedings provision directed to the modification court requires the court to determine at the outset whether an enforcement proceeding has already been commenced in another state. Tenn.Code Ann. § 36–6–221(c). If an enforcement proceeding has been commenced in another state, the modification court has three options: (1) stay the modification proceeding pending the entry of an order by the enforcement court either granting or denying the petition for enforcement or staying or dismissing the enforcement proceeding; (2) enjoin the parties from continuing with the enforcement proceeding; or (3) proceed with the modification under conditions it considers appropriate. Tenn.Code Ann. § 36–6–221(c)(1)–(3).

The simultaneous proceedings provision directed to the enforcement court does not impose an affirmative duty on the court to determine at the outset whether a modification proceeding has already been commenced in another state. Tenn.Code Ann. § 36–6–231. Such a requirement would run counter to the expedited nature of the UCCJEA's enforcement procedures. However, if the enforcement court determines that a modification proceeding has been commenced in another state that meets the jurisdictional requirements of the UCCJEA, the enforcement court must immediately communicate with the modification court. Tenn.Code Ann. § 36–6–231. The enforcement court is not required to stay or dismiss the enforcement proceeding, but it is permitted to do so after consulting with the modification court. Tenn.Code Ann. § 36–6–231. The enforcement proceeding continues until the enforcement court stays or dismisses it, Tenn.Code Ann. § 36–6–231, or until the modification court enjoins the parties from continuing with the enforcement proceeding, Tenn.Code Ann. § 36–6–221(c)(2).

The Florida District Court of Appeal recently construed these provisions of the UCCJEA as conferring greater discretion on the enforcing court to proceed with the enforcement of a custody order than they confer on a modification court to proceed with the modification of a custody order. *Staats II*, 924 So.2d at 84. We have the utmost respect for the Florida District Court of Appeal's construction of the UCCJEA. However, neither the Full Faith and Credit Clause nor the PKPA requires us to adopt the Florida court's interpretation of the UCCJEA,[50] and in our view, the statutory text points to the contrary conclusion. After all, the UCCJEA expressly empowers the modification court to enjoin the parties from continuing with the enforcement proceeding, but it conveys no similar authority on the enforcement court to enjoin the parties from continuing with the modification proceeding. *Compare* Tenn.Code Ann. § 36–6–221(c)(2) *with* Tenn.Code Ann. § 36–6–231.

Our conclusion is bolstered by the official commentary to both sections addressing simultaneous modification and en-

---

Tenn.Code Ann. § 36–6–205(4) (emphasis added); *accord* Fla. Stat. Ann. § 61.503(4); UCCJEA § 102(4), 9 U.L.A. at 658.

**49.** *Accord* Fla. Stat. Ann. § 61.530; UCCJEA § 307, 9 U.L.A. at 693–94.

**50.** *Crichton v. Succession of Crichton*, 232 So.2d 109, 114 (La.Ct.App.1970) ("The Full Faith and Credit Clause ... does not require that we agree with another court's interpretation of one of our statutes.")

forcement proceedings. The comment to the provision addressed to the modification court notes that under the statutory text, the modification court may wish to communicate with the enforcement court but is not required to do so. Tenn.Code Ann. § 36–6–221 cmt.[51] The comment acknowledges that enforcement courts are required to enforce child custody determinations made in accordance with the jurisdictional requirements of the PKPA but points out that this duty is always "subject to the decree being modified by a state with the power to do so under the PKPA." Tenn.Code Ann. § 36–6–221 cmt. The comment refers the reader to the simultaneous proceedings provision addressed by the enforcement court and observes that "[t]hat section requires the enforcement court to communicate with the modification court in order to determine *what action the modification court wishes the enforcement court to take.*" Tenn.Code Ann. § 36–6–221 cmt. (emphasis added).

The comment to the section addressed to the enforcement court explains that enforcement proceedings will "[n]ormally" take precedence over modification proceedings because of the PKPA provisions regarding exclusive, continuing jurisdiction and home state jurisdiction. Tenn.Code Ann. § 36–6–231 cmt.[52] The comment recognizes that the UCCJEA requires the enforcement court to communicate with the modification court to avoid duplicative litigation and that the courts might decide together that the enforcement proceeding should be stayed while the modification proceeding continues. Tenn.Code Ann. § 36–6–231 cmt. However, the comment concludes as follows:

> The ultimate decision rests with the court having exclusive, continuing juris-

diction ..., or if there is no state with exclusive, continuing jurisdiction, then the decision rests with the state that would have jurisdiction to modify.... Therefore, if that court determines that the enforcement proceeding should be stayed or dismissed, the enforcement court should stay or dismiss the proceeding. If the enforcement court does not do so, the court with exclusive, continuing jurisdiction ... or with modification jurisdiction ... could enjoin the parties from continuing with the enforcement proceeding.

Tenn.Code Ann. § 36–6–231 cmt.

▋ As we read the statutory text and the official comments, the Tennessee trial court had discretion to press ahead with the Tennessee modification proceeding in spite of the ongoing enforcement proceeding in Florida. The Tennessee trial court contacted the Florida trial court prior to the June 22, 2005 show cause hearing on Mr. Staats's request for primary residential custody pending a final decision on his second modification petition. The hearing transcript shows that the Tennessee trial court was under the impression from its conversation with the Florida trial court that the Florida trial court agreed that the Tennessee trial court should exercise jurisdiction over the child custody issue, at least temporarily. It was the Tennessee trial court's understanding that the Florida trial court intended to conduct further proceedings regarding the issue of child support only and did not plan to take further action with respect to the issue of child custody.

Moreover, by the time Mr. Staats filed his second modification petition, the child had been living with him in Tennessee

**51.** *Accord* UCCJEA § 206 cmt., 9 U.L.A. at 681.

**52.** *Accord* UCCJEA § 307 cmt., 9 U.L.A. at 694.

pursuant to the Florida modification judgment for more than eleven months, and it had been years since either Mr. Staats or Ms. McKinnon had actually lived in Florida. Had Ms. McKinnon filed her enforcement petition in Massachusetts where she was then living and where the child had lived for almost two years prior to the entry of the Florida modification judgment, the calculus might have been different. In any event, under the circumstances of the present case, we cannot say that the trial court abused its discretion in deciding not to decline to exercise its modification jurisdiction in deference to the ongoing Florida enforcement proceeding.[53]

### 2.

■■■ Ms. McKinnon also claims that the Tennessee trial court should have declined to exercise subject matter jurisdiction over Mr. Staats's modification petition because he failed to return the child to her in Massachusetts following the issuance of the Florida District Court of Appeal's mandate reversing the Florida modification judgment. This claim raises the specter of "unjustifiable conduct" by the party seeking modification. Tenn.Code Ann. § 36–6–223(a).[54] Subject to three exceptions not relevant here,[55] the UCCJEA provides that "if a court ... has jurisdiction ... because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction." Tenn.Code Ann. § 36–6–223(a). This section addresses the deeply troubling issue of parental kidnaping. As the official commentary explains, this provision was intended to address "cases where parents, or their surrogates, act in a reprehensible manner, such as removing, secreting, retaining, or restraining the child." Tenn.Code Ann. § 36–6–223 cmt.[56] It is designed to "ensure[ ] that abducting parents will not receive an advantage for their unjustifiable conduct." Tenn.Code Ann. § 36–6–223 cmt.

---

**53.** The Florida District Court of Appeal's reversal of the modification judgment effectively terminated the first modification proceeding. What remained was either an "enforcement proceeding[ ]," which is how the Florida District Court of Appeal recently characterized it, *Staats II*, 924 So.2d at 86, or a proceeding involving the modification of Mr. Staats's child support obligation. The definitional section of the UCCJEA does not specifically exclude proceedings involving child support and other financial matters from the statutory definition of a "Child custody proceeding." Tenn.Code Ann. § 36–6–205(4); *accord* Fla. Stat. Ann. § 61.503(4); UCCJEA § 102(4), 9 U.L.A. at 658. However, child support proceedings do not necessarily involve "legal custody, physical custody, or visitation" and thus do not automatically satisfy the basic statutory definition of a "Child custody proceeding." Tenn.Code Ann. § 36–6–205(4). In addition, the definitional section of the UCCJEA is clear that the term "Modification" refers only to changes to a "Child custody determination," Tenn.Code Ann. § 36–6–205(11), and that "an order relating to child support or other monetary obligation of an individual" does not constitute a "Child custody determination," Tenn.Code Ann. § 36–6–205(3). As a result, characterizing the ongoing Florida proceeding as a child support modification proceeding rather than a child custody enforcement proceeding does not change the outcome of the jurisdictional analysis.

**54.** *Accord* Fla. Stat. Ann. § 61.521(1); UCCJEA § 208(a), 9 U.L.A. at 683–84.

**55.** A court may exercise jurisdiction in spite of unjustifiable conduct by the party seeking modification only if the child's parents and all persons acting as parents acquiesce, if a court of the state that would otherwise have jurisdiction determines that the modification court is a more appropriate forum for resolving the child custody dispute, or if no court of any state has jurisdiction under the UCCJEA's jurisdictional requirements. Tenn.Code Ann. § 36–6–223(a)(1)–(3).

**56.** *Accord* UCCJEA § 208 cmt., 9 U.L.A. at 684.

Ms. McKinnon's claim that Mr. Staats engaged in unjustifiable conduct by failing to return the child to her in Massachusetts after the Florida District Court of Appeal issued its mandate reversing the Florida modification judgment is not supported by the undisputed facts or Ms. McKinnon's own pleadings. The child was eight years old when the Florida District Court of Appeal issued its mandate reversing the modification judgment. It would have been irresponsible for Mr. Staats to put the child on a plane to Massachusetts the day after the mandate issued without coordinating with Ms. McKinnon in advance. Moreover, there is nothing in the record to suggest that in the ten days following the issuance of the mandate, Ms. McKinnon demanded or even asked that Mr. Staats return the child to her in Massachusetts immediately or attempted to contact Mr. Staats to discuss the arrangements for transporting the child. In addition, as far as we can tell from the record on appeal, Ms. McKinnon took no action in the courts of Massachusetts, Tennessee, or Florida to obtain enforcement of the initial custody determination following the issuance of the May 13, 2005 mandate until after Mr. Staats filed his modification petition in Tennessee.

Mr. Staats did not abscond with the child to another state, hide the child from Ms. McKinnon, or use threats, intimidation, or violence in an attempt to avoid complying with the Florida District Court of Appeal's mandate.[57] Instead, Mr. Staats sought relief in a court of law by filing a modification petition in Tennessee

based on facts that arose after the entry of the modification judgment and which had therefore never been considered by the Florida courts. We have no doubt that a parent's refusal to return a child to the other parent following the reversal of a modification judgment could, under certain circumstances, amount to unjustifiable conduct requiring a court to decline to exercise modification jurisdiction. However, under the particular facts and time periods involved in the present case, we view Mr. Staats's decision to file a second modification petition in Tennessee ten days after the issuance of the May 13, 2005 mandate rather than placing his eight-year-old child on a plane to Massachusetts without proper coordination with Ms. McKinnon as both legal and reasonable. Accordingly, the trial court did not err in failing to decline to exercise modification jurisdiction on the basis of unjustifiable conduct by Mr. Staats.

## V.

For the foregoing reasons, we affirm the trial court's orders asserting jurisdiction over the second modification petition and remand the case for further proceedings. We tax the costs of this appeal to Noel E. McKinnon and her surety for which execution, if necessary, may issue.

---

**57.** This brief litany of reprehensible parental conduct does not, of course, exhaust the types of behavior that might qualify as unjustifiable conduct requiring a court to decline to exercise modification jurisdiction under the UC-CJEA.