IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2010 Session

## KAREN D. CONOVER v. BRIAN SCOTT CONOVER

**Appeal from the Chancery Court for Dickson County**
**No. 9157-04      George C. Sexton, Judge**

**No. M2009-01856-COA-R3-CV - Filed August 31, 2010**

With the approval of the trial court, a divorced father of four children moved with the children from Tennessee to Arkansas.  Four years later, the mother, who remained in Tennessee, fell behind in her child support payments and filed a petition for modification of child support.  Father responded by filing a motion for contempt against the mother in the Arkansas court, and he entered a limited appearance in Tennessee for the purpose of transferring the entire cause to Arkansas.  After a hearing, the Tennessee court declared Arkansas to be the children's home state, and it transferred all custody and visitation issues to that state, while retaining jurisdiction of child support matters.  The court also denied Mother's petition for modification of child support.  Mother argues on appeal that the trial court erred in relinquishing its jurisdiction over custody because the children still have a "significant connection" to Tennessee.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Allen Curtis Johnson, Charlotte, Tennessee, for the appellant, Karen D. Conover.

Alfred Russell Willis, Mary Arline Evans, Nashville, Tennessee, for the appellee, Brian Scott Conover.

## OPINION

### I. FACTS AND PROCEDURAL HISTORY

The Chancery Court of Dickson County granted Brian Scott Conover ("Father')  an

absolute divorce from Karen D. Conover ("Mother") on the ground of adultery. The Final Decree of Divorce was filed on January 4, 2005. Father was named as the primary residential parent for the four minor children of the marriage, and Mother was ordered to pay $700 per month as child support. Father, an employee of the Walmart Corporation, filed a petition in July of 2005 to be allowed to relocate to Benton County, Arkansas, with the children. After a contested hearing, he received the approval of the court, and they moved shortly thereafter.

On January 15, 2009, Mother filed a petition for modification of child support. She alleged that because of the slowdown in the economy, her income had dropped from about $650 per week to $300 per week. Father did not file a timely response, and on March 10, 2009, Mother filed a motion for default judgment. The following day, Father filed a motion in the Tennessee court in which he stated that he was making a limited appearance "for the purpose of seeking a transfer of this cause to the State of Arkansas, County of Benton."

Father contended that in accordance with the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-201 *et seq.*. Arkansas had become the home state of the children and, therefore, jurisdiction was proper in that state. Father attached to his motion a copy of a petition for contempt he had filed in the Circuit Court of Benton County, Arkansas. In the petition, Father alleged that Mother had failed to make the required $700 child support payment for the month of November 2008, and that she paid only $150 of the $700 due for the month of February 2009, leaving her in arrears.

Mother subsequently filed a petition for contempt against Father. She alleged that Father had interfered with her relationship with the children in a number of ways, including by not allowing them to have regular telephone conversations with her, not allowing them to receive unopened mail from her, and by failing to provide her with information about hospitalization and major illnesses.

The trial court conducted a hearing on Father's motion on March 26, 2009, which was followed by the entry of an order on March 31, 2009. The court found that Arkansas was indeed the home state of the four Conover children, and it ruled that "jurisdiction over all matters regarding the minor children, excluding child support modification and enforcement, shall be and is hereby transferred to the State of Arkansas, County of Benton." The court also stated that the child support modification petition was not well taken and should be denied. [1]

___

[1]The court's decision on child support jurisdiction is consistent with Tenn. Code Ann. § 36-5-2205 of the Uniform Interstate Family Support Act, which provides in pertinent part that "[a] tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child

(continued...)

Mother filed a motion to alter or amend the trial court's order. She attached to her motion the affidavits of ten individuals, all residents of Dickson County, Tennessee. The affiants all testified to continuing warm relationships between Mother and the four children and/or praised Mother's dedication to her children. Many of the affiants were Mother's relatives, including her own mother, her younger sister, her cousin and her adult daughter, and they also testified that the children told them that they hated being in Arkansas because they were mistreated by their stepmother and ignored by their father.

The trial court conducted another hearing on July 30, 2009. Mother testified that her income had declined considerably, but the income tax returns that were entered into evidence did not show such a decline. The trial court also heard arguments as to child support, jurisdiction and contempt. At the conclusion of the hearing, the court declined to modify Mother's child support obligation because she had not proved a significant variance in her income, as required under the child support guidelines for such a modification. *See* Tenn. R. & Regs. 1240-4-2-.05(2). The court also declined to alter its determination that the Arkansas court possessed jurisdiction over all matters involving the children, except for child support. The court also dismissed both contempt petitions.[2] This appeal followed.

## II. ANALYSIS

Mother does not appeal the trial court's child support determination, but only that portion of its order which gave the Arkansas Court jurisdiction over child custody and visitation. The determination of whether a particular court has subject matter jurisdiction over custody and visitation matters is a question of law. *Staats v. McKinnon,* 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006). On appeal, such a determination is therefore reviewed *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d).

Tenn. Code Ann. § 36-6-101(a)(1) contemplates that a court which has rendered a valid child custody and support decision in a divorce case will maintain its jurisdiction over the parties "subject to such changes or modifications as the exigencies of the case may require." When the courts of another state become involved in a matter of child custody, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) becomes the exclusive source for determining which state may properly exercise jurisdictional authority over the

---

[1](...continued)
support order: (1) as long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; . . .

[2]The court found that Mother had purged her contempt by paying her child support arrearages on July 29, 2009, and that her contempt petition against Father was "impermissibly vague."

matter. *Staats v. McKinnon*, 206 S.W.3d at 547. The construction and purposes of the Act are set out in Tenn. Code Ann. § 36-6-202, which reads,

> This part shall be liberally construed and applied to promote its underlying purposes and policies. This part should be construed according to its purposes, which are to:
> (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
> (2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
> (3) Discourage the use of the interstate system for continuing controversies over child custody;
> (4) Deter abductions of children;
> (5) Avoid relitigation of custody decisions of other states in this state; and
> (6) Facilitate the enforcement of custody decrees of other states.

One key concept in the Act is the "Home State" of the child or children, which is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." Tenn. Code Ann. § 36-6-205(7). Under the UCCJEA, the child's home state is the preferred forum for decision in an initial child custody proceeding. Tenn. Code Ann. § 36-6-216.

Mother does not dispute the trial court's finding that Arkansas had become the home state of the four minor children in this case. She correctly observes, however, that the determination of proper jurisdiction for proceedings under the Act after the initial custody decision has been rendered requires a broader inquiry than merely determining whether the home state of the children had changed.

The official comments to the text of Tenn. Code Ann. § 36-6-217 explain among other things that ". . . even if the child has acquired a new home state, the original decree state retains exclusive, continuing jurisdiction, so long as the general requisites of the substantial connection provisions are met." Tenn. Code Ann. § 36-6-203 provides that "[i]n any dispute as to the proper construction of one (1) or more sections of this part," the official comments to each section of the UCCJEA "shall constitute evidence of the purposes and policies underlying such sections, . . ." *See also*, *Polk v. Denney*, No. M2006-00670-COA-R3-JV, 2008 WL 2925036 at *9 (Tenn. Ct. App. July 28, 2008) (no Tenn. R. App. P. 11 application filed); *Arendale v. Arendale*, No. W2005-02755-COA-R3-CV, 2008 WL 481943 at *2 (Tenn. Ct. App. Feb. 22, 2008) (Rule 11 Application for Permission to Appeal dismissed

May 19, 2008).

In her motion to alter or amend, as well as in this appeal, Mother relies on Tenn. Code Ann. § 36-6-217(a) which provides in pertinent part that,

> Except as otherwise provided in § 36-6-219,[3] a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
>
> > (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships;

Mother insists that in order to relinquish its jurisdiction over a custody case, the trial court must first determine that both conditions set out in Tenn. Code Ann. § 36-6-217(a) have been met. That is, she argues that the court must find both that the children no longer have a significant connection with this state **and** that substantial evidence is no longer available in this state concerning their care, protection, training, and personal relationships.

In its ruling from the bench, the trial court stated that "all of the significant connections to the children are in Arkansas," but it did not otherwise refer to the conditions set out in Tenn. Code Ann. § 36-6-217(a). We will therefore examine the allegations in Mother's contempt petition and the affidavits she presented to the trial court to determine whether it was proper for the trial court to relinquish jurisdiction over this case under the UCCJEA.

All the affidavits allege that there is a strong bond between the children and Mother. The affidavits of Mother's family members also allege that the children still have strong emotional ties to those other family members; that Stacy Conover, the children's stepmother, is unreasonably strict with them; that she neglected to seek treatment for a broken arm suffered by one of the children; and that she has attempted to undermine Mother's relationship with the children. While such allegations may be cause for concern, they do not preclude a finding by the trial court that the conditions required for it to maintain its

---

[3]Tenn. Code Ann. § 36-6-219 deals with temporary emergency jurisdiction, where a child is physically present in this state, and has been abandoned or must be protected from actual or threatened mistreatment or abuse.

continuing, exclusive jurisdiction over this case no longer exist.

We note that at the time of trial, the four children had been living with Father in Arkansas for four years and that the move to that state was sanctioned by the Tennessee court. Wife has not asked the court to transfer custody of the children to her, but she has alleged in a contempt petition that Father interfered with her relationship with the children by preventing them from talking on the phone to her, not allowing them to receive unopened mail from her, not providing her with medical information about them, and denying her any information regarding their education. Thus, she sought enforcement of an existing custody and visitation order. Most of the witnesses who could shed light on these allegations reside in Benton County, Arkansas, and most of the relevant evidence about them must be gathered in that county. Thus, substantial evidence concerning the children's care, protection, training, and personal relationships must be sought in Arkansas, because it is no longer available in this state.

In *Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071 (Jan. 26, 2009) (no Tenn. R. App. P. 11 application filed), this court was confronted with a similar situation to the one before us. The Tennessee trial court named the mother as the primary residential parent of the parties' two minor children, and she subsequently moved from Tennessee with the children, first to Georgia and then to Florida.

Seven years after the mother left Tennessee, the father filed a petition for contempt against her, alleging among other things that she had interfered with the provision of the parenting plan regarding telephone contact with the children, and he asked the trial court to modify the parenting plan. The mother responded with motions to dismiss on several grounds, including lack of jurisdiction. The trial court denied the motions, and after a trial it designated the father as the primary residential parent. The mother appealed.

This court reversed, finding that the trial court had erred when it did not dismiss the case for lack of subject matter jurisdiction. We noted that ample evidence was available in Florida about the children's care, protection, training, and personal relationships, and that very little such evidence was available in Tennessee. The proof showed that the mother and her husband had lived in the same Jacksonville neighborhood for a number of years and had friends there. The children's schooling, their church, their extra-curricular activities, their health care, all took place in Florida, and thus their teachers, their minister, their coaches and their doctors were also Florida residents. *Graham v. Graham,* 2009 WL 167071 at *9.

We noted that "the only connection the children have with Tennessee is that their father lives there and they visit with him during holidays and summers." *Id*. This court accordingly concluded that the connection to the alternate residential parent was not

sufficient to allow the Tennessee trial court to retain continuing exclusive jurisdiction over this case under the standards set out in Tenn. Code Ann. § 36-6-217(a).

Like the Graham children, the only connection the children in this case have with Tennessee is through parental visitation. The affidavits in the record show that when the Conover children visit their Mother, they also see their grandmother and other relatives.

Nonetheless, the UCCJEA gives the court that made the initial custody decision the authority to determine when its exclusive, continuing authority over custody has ended. This court has characterized that authority as "a right of first refusal." *Jones v. Taylor*, No. M2005-02772-COA-R10-CV, 2006 WL 2450273, at *7 (Tenn. Ct. App. Aug. 21, 2006) (no Tenn.R.App. P. 11 application filed); *Cliburn v. Bergeron*, Nos. M2002-01386-COA-R3-CV, M2001-03157-COA-R3-CV, 2002 WL 31890868, at *8 (Tenn. Ct. App. Dec. 31, 2002) (no Tenn. R. App. P. 11 application filed).[4]

Such a formulation implies that the trial court can exercise a certain degree of discretion when determining whether to retain or to relinquish jurisdiction of a custody matter when another state is also a legitimate candidate for the exercise of jurisdiction. After thoroughly examining the record in this case, and in light of the liberal construction the court is authorized to apply to the Act under Tenn. Code Ann. § 36-6-202 in order to promote its purposes, we find that the trial court did not err in this case when it exercised its discretion to transfer jurisdiction of custody matters to the Arkansas court. That jurisdiction necessarily includes enforcement of existing orders.

### III.

The order of the trial court is affirmed. Tax the costs on appeal to the appellant, Karen D. Conover.

_____
PATRICIA J. COTTRELL, JUDGE

---

[4]If the Arkansas court had unilaterally decided to exercise jurisdiction over this case, such decision would have been contrary to the terms of the Act. To avoid jurisdictional competition and conflict, the Act specifically directs the courts of the different states to communicate among themselves when a proceeding arises under the Act. Tenn. Code Ann. § 36-6-213.