IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 20, 2014 Session

## BARRY CRAIG TAYLOR v. SARAH ANN McCLINTOCK

**An Appeal from the Chancery Court for Sumner County**
**No. 20013-DM-320      Tom E. Gray, Chancellor**

---

**No. M2013-02293-COA-R3-CV - Filed July 25, 2014**

---

This appeal involves a Tennessee court's jurisdiction to modify a parenting order entered by a court in another state. The parties were divorced in Florida, and the Florida court designated the mother as the primary residential parent of the parties' only child. Soon thereafter, the father moved to Tennessee. Years later, after many parenting disputes, the Florida court entered an order granting the father "make-up" parenting time by allowing the child to live in Tennessee with the father for a defined period of time that exceeded six months. At the same time, the Florida court granted the mother permission to relocate to Alabama. After the child had lived with the father in Tennessee for over six months in accordance with the Florida order, the father filed a petition in the Tennessee trial court below, seeking to modify the Florida parenting plan to designate him as the primary residential parent. The trial court held that it did not have subject matter jurisdiction to modify the Florida parenting order under the Uniform Child Custody Jurisdiction and Enforcement Act. The father now appeals. We reverse the Tennessee trial court's holding that it lacked subject matter jurisdiction to adjudicate the father's Tennessee custody petition, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Russell E. Edwards, Hendersonville, Tennessee, for the Petitioner/Appellant, Barry Craig Taylor

Jeffrey Spark, Nashville, Tennessee, for the Respondent/Appellee, Sarah Ann McClintock

# OPINION

## FACTS AND PROCEEDINGS BELOW

In November 2004, Petitioner/Appellant Barry Craig Taylor ("Father") and Respondent/Appellee Sarah Ann McClintock ("Mother") were married in Sumner County, Tennessee. Soon thereafter, they moved to Orange County, Florida. In July 2005, while in Florida, the parties' only child was born, a daughter ("Daughter").

In March 2008, the parties were divorced by final decree in the Circuit Court of Orange County, Florida ("Florida Court"). The Florida Court designated Mother as the primary residential parent. Father, as secondary residential parent, was awarded residential parenting time with the child every other weekend. In addition, the Florida Court awarded Father parenting time for five weeks during the summer and alternate holidays. The Florida Court gave the parties joint decision-making authority regarding the child.

The Florida divorce decree indicated that Father anticipated relocating out of Florida soon after the divorce. It included a provision that, if Father moved more than four hours away from Mother, his alternate residential parenting time would consist of "7 consecutive days per month" of parenting time instead of alternate-weekend parenting time.

As expected, Father left Florida soon after the divorce and moved back to Tennessee. At that point, by the terms of the Florida divorce decree, Father was to have one week per month of residential parenting time with Daughter, in addition to the summer and holiday parenting times.

Apparently the parties' parenting arrangement did not go as planned. Over the next few years, several motions were filed in the Florida Court on parenting issues, and the Florida Court entered orders enforcing the parenting schedule set out in the final decree. The orders included provisions awarding Father considerable "make-up" residential parenting time with the parties' daughter. By September 2011, Father had accrued 39 weeks of make-up parenting time.

On September 12, 2011, the Florida Court entered an order entitled "Order as to [Father's] Make-Up Time With the Minor Child and Child Support." In that order, the Florida Court set out a schedule allowing Father to exercise part of his make-up parenting time with Daughter by having an extra two weeks in the summer, extra spring breaks not previously assigned to him, and a few extra days during the Thanksgiving and Christmas holidays. The order also required Father to pay a portion of his child support arrearage.

At some point in 2012, Mother filed a "Motion for Temporary Relocation." The motion apparently indicated that Mother had remarried, and she sought permission to relocate with the parties' daughter to Alabama to live there with her new husband.[1] In December 2012, the Florida Court held a hearing on Mother's motion. The appellate record does not include a transcript of that hearing.

On February 4, 2013, the Florida Court issued an order, entered *nunc pro tunc* to January 22, 2013. At the outset of the order, the Florida Court stated: "The State of Florida is the home state of the Child and jurisdiction and venue is and continues to be proper in this Court. The Court will retain jurisdiction to make a final determination of all issues at trial on the pending pleadings." The trial court granted Mother's motion for temporary relocation to Alabama, but only on certain conditions. First, the Florida Court said, Father would be permitted to exercise the rights of the primary residential parent for a defined period, namely, "[f]rom January 26, 2013 until the beginning of school for the fall term of 2013." In connection with this, the Florida Court directed Mother to "disenroll" the child from her school in Florida and directed Father to enroll the child in school near his home in Tennessee for the remainder of the 2012-2013 school year. Second, the Florida order stated, during the period in which Father was designated as the primary residential parent, Mother would have the rights and responsibilities of a secondary residential parent, and she would have parenting time on a schedule similar to the schedule of parenting time assigned to Father in the final divorce decree. The Florida Court explained in the order that the purpose of this parenting schedule was "to enforce the previously ordered make-up time-sharing between [Father] and the child."[2] The order did not state what the parenting arrangement would be after Father's temporary stint as primary residential parent.

The February 2013 Florida order referenced a motion Father filed, entitled "Motion for Temporary Relief," as well as other unspecified motions that remained pending before the Florida Court. The record reflects that Father had filed motions to modify the parenting plan to designate him as the primary residential parent. The Florida order stated: "The Court takes no action on the 'Former Husband's Motion for Temporary Relief' at this time. . . . This Order supersedes any terms of the Final Judgment or previously entered orders which are inconsistent herewith, pending trial on the supplemental pleadings."

---

[1]The actual motion is not in the appellate record, but the orders that followed indicated what Mother was requesting.

[2]In the order, the Florida Court indicated that it had rendered oral findings of fact at the December 2012 hearing, but the appellate record does not include a transcript of the oral ruling and the specific findings of fact are not detailed in the February 2013 order.

In accordance with the Florida Court's order, on January 26, 2013, Daughter moved to Tennessee to live with Father. As per the Florida Court's instruction, Father enrolled her in school in Tennessee. Mother moved to Alabama.

On August 8, 2013, the Florida Court entered a final order granting Mother's petition for permission for parental relocation. The order includes no provisions for a parenting schedule and does not indicate how Mother's relocation to Alabama would affect the permanent parenting arrangement. Unlike the February 2013 Florida order, the August 2013 Florida order did not include any language indicating that the Florida Court planned to retain exclusive, continuing jurisdiction or that Florida would remain the child's home state.

On August 9, 2013, Father filed a notice in the Florida Court voluntarily dismissing his pending Petitions for Modification of the Florida divorce decree. According to Father, his voluntary dismissal left no modification petitions pending in the Florida Court as of that date.

On August 12, 2013, Father, acting *pro se*, filed two pleadings in the Chancery Court for Sumner County, Tennessee ("Tennessee Court"). First, he filed a "Notice of Filing of Foreign Decree and Registration," in order to register the Florida Court's orders in Tennessee. Second, he filed a petition pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Tennessee Code Annotated § 36-6-201, *et seq*., entitled "Verified Petition For Registration of Foreign Decree and Modification of a Foreign Child Custody Determination." In the petition, Father asked the Tennessee Court to register in Tennessee nine Florida orders, which were the Florida divorce decree and eight other parenting-related orders entered by the Florida Court. The Florida orders Father sought to register are:

1. March 27, 2008 — Final Decree of Divorce

2. March 31, 2010 — Order Granting [Father's] Emergency Motion for Contempt

3. June 22, 2010 — Order on [Father's] Emergency Motion for Contempt and/or Request for Expedited Hearing

4. August 24, 2010 — Order on [Father's] Motion for Temporary Custody

5. March 14, 2011 — Order on Spring Break Timesharing

6. August 4, 2011 — Order on [Father's] Petition for Relocation

7. September 12, 2011 — Order as to [Father's] Make-Up Time With the Minor Child and Child Support

8. February 4, 2013, *nunc pro tunc* January 22, 2013 — Temporary Order Disposing of [Mother's] Motion for Temporary Relocation and Enforcing [Father's] Previously Ordered Make-Up Time-Sharing

9. August 8, 2013 — Final Order Granting [Mother's] Petition for Parental Relocation

In addition, Father filed a petition asking the Tennessee Court to modify the Florida child custody determination to designate him as Daughter's primary residential parent based on a substantial and material change in circumstances pursuant to Tennessee Code Annotated section 36-6-218. In his petition, Father asserted that the Tennessee court had jurisdiction to modify the decree because Tennessee had become the home state of the child. This assertion was based on the fact that Daughter had resided with him in Tennessee continuously since January 26, 2013, a period of more than six months, and that she was enrolled in school in Tennessee at that time. His petition noted that, at the time the Tennessee petition was filed, neither parent lived in Florida, and the child had not lived in Florida since January 25, 2013. The petition stated: "There are currently no open or pending child custody proceedings in this state or in any other state, concerning custody of the child," and "[n]o other state can exercise jurisdiction under the UCCJEA." Therefore, he argued, the Tennessee Court should register the Florida orders and entertain his petition to modify the Florida parenting arrangement. Father attached to his petition his UCCJEA affidavit[3] and a copy of all of the orders sought to be registered.

On August 14, 2013, Father filed in the Tennessee Court a "Verified Emergency Ex-Parte Motion for Determination of Jurisdiction Under the UCCJEA." The next day, Father filed a "Verified Motion for Determination of Jurisdiction Under the UCCJEA and to Declare Tennessee as the Home State" for Daughter. A copy of the motion was mailed to Mother by certified mail at her address in Alabama.

On August 23, 2013, Attorney Mike Carter filed a notice of appearance in the Tennessee Court to notify the court that he had been retained to represent Father in the proceedings.

---

[3]Pursuant to Tennessee Code Annotated section 36-6-224, "each party, in its first pleading or in an attached affidavit, shall give information" as to the child's whereabouts and the places where the child lived during the previous five years, and the party must also give any information about proceedings pending in other courts related to the child about which the affiant is aware. Tenn. Code Ann. § 36-6-224 (2010).

A few days later, on August 26, 2013, the Tennessee Court held a hearing on Father's motion for determination of jurisdiction. The appellate record does not include a transcript of that hearing. The order entered on the hearing implies, but does not expressly state, that Mother and Father were both represented by counsel at the hearing.[4]

On August 28, 2013, the Tennessee Court entered a preliminary order. It took under advisement the issue of whether Tennessee is the child's home state and whether the Tennessee Court had jurisdiction under the UCCJEA to modify the Florida Court's orders. The Tennessee Court stated that it intended to "confer with Judge Bob LeBlanc in the [Florida Court] prior to making a decision" on those issues. It held, however, that the February 2013 Florida order required Father to return Daughter to Mother at the beginning of the 2013-2014 school year, and that Father had not done so. The Tennessee Court ordered Father to return Daughter to Mother in Alabama pending resolution of the issues in Father's Tennessee petition.

On September 12, 2013, the Tennessee Court entered an order on the jurisdictional issues taken under advisement. It concluded that it did not have jurisdiction under the UCCJEA to modify the Florida orders. The Tennessee Court explained:

> This Court spoke with the Honorable Bob LeBlanc, Judge [of the] Circuit Court for the Ninth Judicial District for Orange County, Florida and it was agreed that under the Court placement of the child with the father for make up time should not be used in calculation of home state according to [the UCCJEA].
> The [UCCJEA] is the exclusive source for the ground rules for exercising jurisdiction to modify another State's child custody determination, T.C.A. § 36-6-218; *Staats v. McKinnon*, 206 S.W.3d 532; 547.
> When a Court is confronted with a Petition to Modify another State's child custody determination, the Court must [undertake] a three part threshold jurisdictional analysis.
> First, the Court must decide whether the State that made the initial custody determination retains exclusive continuing jurisdiction.
> The State of Florida made the initial determination and the Court in Florida placed the child with the father for make up parenting time and the Order of the Florida Court set out time for make up and return of the child to the mother. The Court in Florida has not determined that it no longer has exclusive continuing jurisdiction. The Florida Court retains jurisdiction.

---

[4]The order states that the Tennessee Court's decision was based "[u]pon the statement of counsel for the parties. . . ."

Neither parent resides in Florida. The Florida Court at separate times granted the father and the mother the right to relocate. The father relocated to Tennessee and the mother relocated to Alabama. Florida has not lost jurisdiction in this matter and the Court has not declined to exercise jurisdiction.

Second, the Tennessee Court would not have jurisdiction to make an initial custody determination under the present circumstances which are that the Florida Court made an Order that it has jurisdiction.

. . . Tennessee is not the Home State although the child resided with the father for six (6) months in Tennessee. This residency was a Court Order and the father was under a duty to return the child to the mother at the opening of school in the fall. In Tennessee the opening of public school occurred in August, 2013. The father refused to return the child to the mother.

Third, under the circumstances of this case the Tennessee Court must decline jurisdiction. Florida is the home State, not Tennessee.

Plaintiff father filed a Voluntary Dismissal in the Florida Circuit Court of the Supplemental Petition for Modification of Final Judgment of Dissolution of Marriage filed January 24, 2013.

The Court finds the State of Florida and specifically, the Ninth Judicial Circuit Court in and for Orange County, Florida has jurisdiction and the Court in its Order for the 22nd day of January, 2013, at paragraph 3 stated, "The State of Florida is the home state of the child and jurisdiction and venue is and continues to be proper in this Court. The Court will retain jurisdiction to make a final determination of all issues at trial on the pending pleadings."

Thus, the Tennessee Court below noted that both Mother and Father had relocated outside of Florida, but it nevertheless held that Florida is Daughter's home state and that the Florida Court retained exclusive, continuing jurisdiction. The Tennessee Court indicated that it "declined" jurisdiction because "Florida is the home state, not Tennessee." From this order, Father now appeals.

### ISSUE ON APPEAL AND STANDARD OF REVIEW

On appeal, Father argues that the Tennessee Court below erred in concluding that it does not have subject matter jurisdiction under the UCCJEA.

The issue of whether a court has subject matter jurisdiction under the UCCJEA is a question of law, which we review *de novo*, with no presumption of the correctness in the trial court's decision. **Button v. Waite**, 208 S.W.3d 366, 369 (Tenn. 2006). "The concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or

controversy." ***Staats v. McKinnon***, 206 S.W.3d 532, 541-42 (Tenn. Ct. App. 2006). Parties cannot confer subject matter jurisdiction on a court by appearance, plea, consent, silence, or waiver. ***Id.*** at 542. We also "review questions of statutory interpretation *de novo*, with no presumption of correctness given to the courts below." ***Button***, 208 S.W.3d at 369. Any findings of fact that serve as the basis for the trial court's decision, however, are presumed correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d).

In this appeal, Father indicates in his appellate brief that he did not file a transcript or statement of the evidence because "[n]o testimony was given or evidence offered at a trial" in the Tennessee Court below. He filed only the nine orders of the Florida Court which he seeks to register in Tennessee. On appeal, the appellant bears the burden of demonstrating that the evidence presented below preponderates against the trial court's judgment. ***Manufacturers Consolidation Serv., Inc., v. Rodell***, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000). To that end, the Tennessee Rules of Appellate Procedure require the appellant to prepare the record on appeal so that it conveys a fair, accurate, and complete account of what transpired with respect to the issues raised on appeal. Tenn. R. App. P. 24(b); *see also In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). In the absence of a transcript or statement of the evidence, the appellate court must conclusively presume that the evidence was sufficient to support the trial court's findings of fact. ***Mfrs. Consolidation Serv., Inc.***, 42 S.W.3d at 865. Therefore, in the instant case, we will assume that any facts found by the trial court are supported by the evidence and will address the issue of subject matter jurisdiction as a facial, rather than a factual, challenge to the Tennessee Court's holding on jurisdiction. ***See Staats***, 206 S.W.3d at 544.

## ANALYSIS

On appeal, Father argues that the trial court erred in holding that Tennessee is not Daughter's home state. Father asserts that the Tennessee court refused to recognize the time Daughter lived in Tennessee only because the six months the child spent in Tennessee was designated by the Florida Court as "make up" parenting time. Under the UCCJEA definition of "home state," Father claims, the reason Daughter was living in Tennessee is irrelevant, so long as she lived in Tennessee over six months for a legitimate reason. In support, Father relies on ***Staats v. McKinnon, supra***.

In response, Mother argues that the reasoning in the ***Staats*** case is not applicable in this appeal because Father kept Daughter beyond the time permitted in the Florida Court's February 2013 order. She asserts: "Father has made a calculated, blatant and illegal attempt to wrest jurisdiction from the Florida trial court and deprive Mother of the opportunity to register and enforce the Florida Court's orders in Alabama where she now resides." She argues that the six-month period Daughter spent living with Father in Tennessee was only

a "period of temporary absence" from her actual home state of Florida, so under the UCCJEA that time in Tennessee cannot be used to determine the child's home state. Mother cites ***Stanford v. Sylvain***, No. M2006-01782-COA-R3-CV, 2007 WL 1062080 (Tenn. Ct. App. Apr. 5, 2007), to support her position.

The UCCJEA is a complex statute, and resolution of the issue raised on appeal requires us to methodically apply the language in each pertinent part of the UCCJEA to the facts presented in this appeal.

## Jurisdiction to Modify Custody Under the UCCJEA[5]

Issues of jurisdiction in interstate child custody matters are resolved by application of the UCCJEA, which has been adopted in some form by all fifty states. ***Staats***, 206 S.W.3d at 544-45. The UCCJEA was implemented to establish uniformity across the states for the initial entry, enforcement, and modification of child custody orders and to eliminate situations in which courts of different states simultaneously claim authority and issue contradictory custody orders. ***Id.*** at 544. Jurisdiction under the UCCJEA attaches at the commencement of a proceeding. Tenn. Code Ann. § 36-6-217 cmt. The UCCJEA defines the term "commencement" as "the filing of the first pleading in a proceeding." Tenn. Code Ann. § 36-6-205(5); ***see Staats***, 206 S.W.3d at 548-49.

"The UCCJEA is the exclusive source for the ground rules for exercising jurisdiction to modify another state's child custody determination." ***Id.*** at 547. Under Tennessee's version of the UCCJEA, the primary provisions governing jurisdiction are Sections 36-6-217 and 36-6-218. Section 36-6-217 provides:

> (a) Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
>
> > (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that

_____

[5]At oral argument, Mother took the position that the Tennessee Court did not have jurisdiction to modify the Florida Court orders because the Florida orders were never actually enrolled in Tennessee. It is not necessary, however, to enroll a foreign custody order in order to establish jurisdiction to modify it. ***See Butler v. Butler***, No. M2011-01341-COA-R3-CV, 2012 WL 4762105, at *7 (Tenn. Ct. App. Oct. 5, 2012) (recognizing that "statutes on modification of a foreign custody order do not require registration of that order," but that "the same is not true for modification of a foreign support order"). Therefore, we must reject this argument.

substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tenn. Code Ann. § 36-6-217(a) (2010). Section 36-6-218 provides:

Except as otherwise provided in § 36-6-219, a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under § 36-6-216(a)(1) or (2), and:

(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under § 36-6-217 or that a court of this state would be a more convenient forum under § 36-6-221; or

(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

Tenn. Code Ann. § 36-6-318(1) - (2) (2010).

In ***Staats***, the Court of Appeals analyzed the relevant statutes and formulated a "three-part threshold jurisdictional analysis" to determine whether a Tennessee court has jurisdiction to modify a foreign decree, and, if it does, whether the Tennessee court should choose to exercise that jurisdiction:

First, the court must decide whether the state that made the initial custody determination retains exclusive, continuing jurisdiction. Tenn. Code Ann. § 36-6-218(1) – (2). Second, the court must decide whether it would have jurisdiction to make an initial custody determination under the present circumstances. Tenn. Code Ann. § 36-6-218. The court has subject matter jurisdiction to modify the other state's child custody determination only if the other state has lost its exclusive, continuing jurisdiction or declined to exercise it and the court of the new state would have jurisdiction to make an initial custody determination under the present circumstances. Once a court

-10-

determines that it has subject matter jurisdiction under the first two steps of the jurisdictional analysis, it must then proceed to the third step and determine whether it may or must decline to exercise its modification jurisdiction on one of the three grounds specified in the UCCJEA. Tenn. Code Ann. §§ 36-6-221 to -223.

*Id.* at 547-48 (footnote omitted). We will address in turn each part of the *Staats* framework for analyzing the jurisdictional issue that is presented in this case.

### A. Exclusive, Continuing Jurisdiction in Florida

Under the *Staats* framework, we must first "decide whether the state that made the initial custody determination retains exclusive, continuing jurisdiction." *Id.* at 547. The UCCJEA provides that a state that has made or modified a child custody determination in accordance with the UCCJEA's jurisdictional requirements retains exclusive, continuing jurisdiction over the child's custody until and unless one of two things occurs. First, a state loses exclusive, continuing jurisdiction if a court of that state determines that neither the child, nor the child and at least one parent (or person acting as a parent), continues to have a significant connection with the state, and that substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in the state. Tenn. Code Ann. § 36-6-217(a)(1), -218(1). Second, a state loses exclusive, continuing jurisdiction if a court of any state determines that "the child, the child's parents, and any person acting as a parent do not presently reside" in the state. Tenn. Code Ann. §§ 36-6-217(a)(2), -218(2). According to the official comments to Section 36-6-217, "unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases." Tenn. Code Ann. § 36-6-217 cmt. 2.

In the case at bar, the Tennessee Court below held that the Florida Court retained exclusive, continuing jurisdiction because (1) the Florida Court's February 2013 order contained specific language retaining jurisdiction over the case, (2) the Florida Court "has not determined that it no longer has exclusive continuing jurisdiction," and (3) the Florida Court "has not declined to exercise jurisdiction" over matters involving the custody of Daughter. In essence, then, the Tennessee Court below deferred to the Florida Court and allowed it to make the decision about whether Florida retained exclusive, continuing jurisdiction over the case, even though the undisputed facts indicated that neither the parents nor the child continued to live in Florida.

Respectfully, the conclusion of the Tennessee Court below was error. In *Staats*, the appellate court recognized that a court other than the original court can make the determination of

where the parties and the child reside, and thus can also decide whether the original court retains exclusive, continuing jurisdiction on the basis of the residence of the parents and child. ***Staats***, 206 S.W.3d at 549. "Determining where an individual 'presently reside[s]' does not involve a technical inquiry into the individual's legal domicile under state law. Rather, the sole question is whether the relevant individuals 'continue to actually live within the state' or have 'physically le[ft] the state to live elsewhere.'" ***Id.*** (citation omitted); ***see also Highfill v. Moody***, No. W2009-01715-COA-R3-CV, 2010 WL 2075698, at *10 (Tenn. Ct. App. May 25, 2010). Furthermore, while "[t]he modification State is not [ordinarily] authorized to determine that the original decree State has lost its jurisdiction[,] [t]he only exception is when the child, the child's parents, and any person acting as a parent do not presently reside in the other State." Tenn. Code Ann. § 36-6-218 cmt. The exception noted in ***Staats*** is directly applicable in this case.

In this case, the Tennessee trial court determined from the undisputed facts that, after January 25, 2013, neither Mother, Father, nor the child lived in Florida. By the time Father filed this Tennessee petition to modify, he had voluntarily dismissed the petition he filed in the Florida Court to modify the Florida final decree, so it appears that when he filed the Tennessee action there were no modification petitions pending in Florida. Thus, because there were no modification petitions pending in Florida and the child and both parents lived outside of the state, under the UCCJEA, the Florida Court lost exclusive, continuing jurisdiction over custody of Daughter.[6] Therefore, we must reverse the Tennessee trial court's decision on this issue.

### B. Jurisdiction to Make an Initial Custody Determination

Under ***Staats***, we must next ascertain whether, at the time Father filed his Tennessee modification petition, the Tennessee Court would have had jurisdiction under the UCCJEA to make an initial custody determination. The question of whether a trial court has jurisdiction under the UCCJEA to make an initial child custody determination is governed by Section 36-6-216(a), which provides:

---

[6]The record indicates that the judge of the Florida Court informed the Tennessee trial judge that the Florida Court retained exclusive, continuing jurisdiction. The record does not indicate the basis on which the Florida Court purported to retain any jurisdiction under circumstances in which neither parent nor the child remained in Florida. In similar circumstances, where none of the relevant parties lived in Tennessee, this Court has consistently held under the UCCJEA that a Tennessee trial court lacks jurisdiction to adjudicate custody issues. ***See, e.g., Earls v. Mendoza***, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at *9-10 (Tenn. Ct. App. Aug. 10, 2011); ***McQuade v. McQuade***, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *8 (Tenn. Ct. App. Nov. 30, 2010).

(a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:

(A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under §§ 36-6-221 or 36-6-222; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3).

Tenn. Code Ann. § 36-6-216(a) (2010).

Under subsection (a)(1) of the statute quoted above, "[h]ome state jurisdiction exists if a state is the child's 'home state' on the date the child custody proceeding is commenced or was the child's 'home state' at any point within the past six months and the child is absent from the state but at least one parent or person acting as a parent continues to live there." *Staats*, 206 S.W.3d at 550. The term "home state" is defined by statute:

(7) "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence . . . is part of the period . . . .

Tenn. Code Ann. § 36-6-205(7) (2010).[7] Under this definition, a period of "temporary absence" from the state in which the child actually lived for six months does not "restart the clock in calculating the consecutive six-month period necessary to establish a new home state." *Staats*, 206 S.W.3d at 551.

In the instant case, the facts surrounding this issue are undisputed. As of August 13, 2013, the date on which Father filed the Tennessee petition to modify, Daughter had been living with him in Tennessee for over six months in accordance with the Florida Court's February 2013 order. The Florida Court's February 2013 order designated Father as "temporary" primary residential parent, and Daughter's time living with Father in Tennessee was intended by the Florida Court to be "make-up" parenting time for Father. At approximately the same time Daughter moved to Tennessee to live with Father, Mother left Florida and moved to Alabama. Therefore, it is clear that no one anticipated that Daughter would return to Florida at the end of the "make-up" parenting time with Father, because by that time neither parent lived there. The issue becomes whether, on the date Father commenced the Tennessee proceedings, Tennessee had become Daughter's "home state" under the UCCJEA definition of the term.

Relying heavily on *Staats*, Father argues that Tennessee had become Daughter's home state by the time he filed the Tennessee action. In *Staats*, the parents of the subject child were divorced by final decree in Florida, and the Florida decree designated the mother as the child's primary residential parent. After the divorce, the father moved to Tennessee. The Florida court later permitted the mother to relocate to Massachusetts with the child. The father later filed a petition in Florida to modify the parenting arrangement to designate him as the primary residential parent. Almost two years after the mother moved to Massachusetts, the Florida court granted the father's petition to modify, and so the child moved to Tennessee to live with him. The mother appealed that order, but the child nevertheless immediately moved to Tennessee with the father. Eleven months later, the mother won her Florida appeal and the Florida trial court decision was reversed, so the mother once again became the primary residential parent under the Florida appellate court's ruling. *Staats*, 206 S.W.3d at 537-38.

---

[7]The statute also provides, "In the case of a child less than six (6) months of age, 'home state' means the state in which the child lived from birth with any of the persons mentioned." Tenn. Code Ann. § 36-6-205(7).

-14-

Rather than appealing the Florida intermediate appellate court's decision or sending the child to Massachusetts to live with the mother, the father filed a petition in the circuit court in Tennessee to modify the Florida court's parenting order. He asserted new grounds for the requested modification of custody. The father claimed that Tennessee had become the child's home state because the child had been living in Tennessee during the 11-month period in which the mother's Florida appeal was pending. In response, the mother argued that the 11 months the child spent in Tennessee could not be counted towards the statutory six-month period for the establishment of the child's home state because "the period during which a child has resided in this state pending resolution of a custody dispute may not be considered in reckoning the time necessary to establish 'home state' jurisdiction." *Id.* at 551 (citing *Boyd v. Boyd*, 653 S.W.2d 732, 738 (Tenn. Ct. App. 1983)).

The appellate court in *Staats* rejected the mother's position. It noted that the mother's argument hearkened back to a general rule found in pre-UCCJEA cases. Under the UCCJEA, the *Staats* Court explained, "'it is no longer necessary to determine why the child has been removed' to another state in order to decide whether the new state has acquired home state jurisdiction to modify the initial custody determination." *Id.* at 551-52 (quoting Tenn. Code Ann. § 36-6-216 cmt.). The *Staats* Court reasoned:

> The pre-UCCJEA rule advocated by Ms. McKinnon conflicts not only with the plain language of the statute, but also with the official commentary to the UCCJEA. The comment section titled "Home State Jurisdiction" expressly states that under the UCCJEA, as opposed to the UCCJA, "it is no longer necessary to determine why the child has been removed" to another state in order to decide whether the new state has acquired home state jurisdiction to modify the initial custody determination. Tenn. Code Ann. § 36-6-216 cmt. In other words, under the UCCJEA, the existence of home state jurisdiction, like the determination of where a person "presently reside[s]" for purposes of exclusive, continuing jurisdiction, *depends on a purely factual inquiry into where the child has actually been living*.

*Id.* (emphasis added; footnote omitted). In *Staats*, the child had been living with the father in Tennessee for over six months while the order authorizing her presence in Tennessee was on appeal. Under those circumstances, the *Staats* Court held, Tennessee had home state jurisdiction.

In the instant case, Father cites *Staats* to support his contention that the reason Daughter was living in Tennessee is irrelevant. Under the UCCJEA definition of "home state," Father claims, Daughter lived in Tennessee over six months for a legitimate reason, and so Tennessee became her home state. According to Father, then, the Tennessee Court could

-15-

have made an initial custody determination and the Tennessee Court had jurisdiction to adjudicate his petition to modify the parenting arrangement in the Florida divorce decree.

In response, Mother cites *Stanford v. Sylvain, supra*, to support her position that Daughter's stay in Tennessee was only a "temporary absence" from her real home state. In *Stanford*, the mother lived with the child in Texas, and the father lived in Tennessee. The parties' parenting arrangement was set out in a foreign decree that was properly registered in Texas.[8] At some point, the mother permitted the child to live with the father in Tennessee from December 16, 2004, until the end of the school year in May 2005. At the end of the school year, the father did not return the child to the mother. Instead, in October 2005, he filed a petition in a Tennessee state court, seeking custody and asking the Tennessee court to issue a restraining order. *Stanford*, 2007 WL 1062080, at *1. The mother appeared specially in the Tennessee action to object to the father's petition and to file a motion to dismiss for lack of subject matter jurisdiction. The Tennessee court held that it did not have subject matter jurisdiction. Among other things, it held that the child's extended stay with the father in Tennessee did not make Tennessee the child's home state, because Texas was the child's domicile and, even though the child's visit in Tennessee exceeded six months, it "was for the purpose of an extended visitation period for the Father." The Tennessee trial court noted that the mother did not intend to surrender her right to custody of the child. *Id.* at *5. The father appealed that order.

On appeal in *Stanford*, the appellate court noted that the issue of the child's home state is a question of fact. It held that the trial court did not err in crediting the mother's testimony that she intended only to allow the child to have an "extended stay" in Tennessee and "had no intention of forfeiting her status as custodial parent. . . ."[9] *Id.* at *6. Based on that fact, the appellate court held that, while the child's visit in Tennessee exceeded six months, it was merely a "period of temporary absence" from Texas under the definition of "home state" in Section 36-6-205(7), and it did not establish Tennessee as the child's home state. *Id.* at *7.

The reasoning in *Stanford* was followed in a similar case, *Hogan v. Hogan*, No. W2008-01750-COA-R3-CV, 2009 WL 2632755 (Tenn. Ct. App. Aug. 27, 2009). In *Hogan*, the parties were divorced in the State of Washington in 2001, and the Washington court designated the mother as the children's primary residential parent. The Washington divorce decree noted that the mother planned to move with the children to California, and that California would thereafter be the children's home state. *Hogan*, 2009 WL 2632755, at *1.

---

[8]The operative parenting order was entered in Georgia. *Stanford*, 2007 WL 1062080, at *1.

[9]In *Stanford*, the appellate record contained neither a transcript or a statement of the evidence, and so the trial court's findings of fact were presumed to be correct.

The father then moved from Washington to Tennessee. In 2006, the parties stipulated that the children would live primarily with the father from June 2006 to July 2007 to attend school in Tennessee for one year. The stipulation was not filed in any court. After the children had lived with the father in Tennessee for about ten months, he filed a petition in Tennessee to enroll the foreign decree and to modify the parties' parenting plan. The matter went to arbitration,[10] and the trial court adopted the arbitrator's conclusion that the action should be dismissed for lack of jurisdiction because California, not Tennessee, was the children's home state. *Id.* at *2. The father appealed.

The appellate court in *Hogan* upheld the arbitrator's decision that California was the children's home state. It noted that the children had lived in California for over five years. Citing *Stanford*, the *Hogan* Court held that the ten months the children lived in Tennessee was only a "temporary absence" from their established home state, California. *Id.* at *7. The *Hogan* Court also held that Tennessee did not have "significant connections" jurisdiction. It stated: "Significant connections can be found [as a basis for jurisdiction] only where no other state qualifies as the child's home state, or the home state has declined to extend jurisdiction." *Id.* at *8 (citing Tenn. Code Ann. § 36-6-216(a)(2)). Because California was the children's home state and no California court had declined to exercise jurisdiction, the Tennessee appellate court in *Hogan* held that the Tennessee court did not have the authority to modify the existing parenting plan.

Based on *Stanford* and *Hogan*, Mother argues that, under the UCCJEA, the six months Daughter spent living with Father in Tennessee cannot be used to determine the child's home state. Florida is Daughter's home state, Mother contends, and the six-month period Daughter lived in Tennessee was only a "period of temporary absence" from her home state of Florida.

Respectfully, we cannot agree with Mother that the reasoning in *Stanford* and *Hogan* applies to the facts of this case, or that Florida is Daughter's home state. Unlike the situation in either *Stanford* or *Hogan*, neither the parents nor the original Florida court anticipated that Daughter would return to the original home state (Florida) after her sojourn in Tennessee, because Mother was no longer living there. Thus, Daughter's time living with Father in Tennessee can hardly be considered a "temporary absence" from Florida under the UCCJEA definition of "home state." Rather, all parties understood that Daughter's absence from Florida was permanent.

---

[10]The trial court ordered the parties to arbitrate the matter pursuant to an arbitration provision in the Washington divorce decree. *Hogan*, 2009 WL 2632755, at *2.

-17-

Mother focuses on the fact that, under the February 2013 Florida order, Daughter's time living with Father in Tennessee was intended to be temporary.[11] However, she points to nothing in the statutory definition of "home state" or in the *Staats* analysis indicating that this fact is relevant to the home state determination, so long as her time there was not the result of unjustifiable conduct,[12] and so long as the absence from the original home state is not temporary. "[T]he existence of home state jurisdiction . . . depends on a purely factual inquiry into where the child has actually been living" for the six months preceding the petition. *Staats*, 206 S.W.3d at 552. In the case at bar, pursuant to the Florida order, Daughter had lived in Tennessee for "at least six (6) consecutive months immediately before the commencement of [the Tennessee] child custody proceeding." Tenn. Code Ann. § 36-6-205(7). Her absence from Florida at that point was permanent. It is clear, then, that at time the petition was commenced, Florida was no longer Daughter's home state within the meaning of the UCCJEA.

We must now consider whether Tennessee was Daughter's home state under the UCCJEA when Father commenced the Tennessee custody proceedings. As discussed above, the father in *Staats* refused to return the child to the mother in Florida after the Florida court's order granting him custody was reversed, and he instead filed a petition to modify custody in Tennessee. The Tennessee appellate court in *Staats*, interpreting the UCCJEA definition of "home state," stated that the reason the child lived in Tennessee for over six months was irrelevant. It held: "[U]nder the plain language of the UCCJEA, Tennessee was the child's home state when Mr. Staats filed the modification petition." *Staats*, 206 S.W.3d at 551.

Applying the UCCJEA definition of "home state" to the undisputed facts in the instant case, Tennessee is "the state in which [Daughter] lived with [Father] . . . for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." Tenn. Code Ann. § 36-6-205(7). As noted in *Staats*, the comments to Section 36-6-216 indicate that, under the UCCJEA, "'it is no longer necessary to determine why the child has been removed' to another state in order to decide whether the new state has acquired home state jurisdiction to modify the initial custody determination. . . . [T]he existence of home state jurisdiction . . . depends on a purely factual inquiry into where the child has actually been living." *Staats*, 206 S.W.3d at 551-52 (citation and footnote omitted). Because Daughter lived with Father for over six consecutive months preceding the filing of the

_____

[11]None of the Florida trial court orders addressed what the parenting arrangement would be once Father's stint as temporary primary residential parent ended at the onset of the fall 2013 school term.

[12]If the child is in the jurisdiction for over six months because of the unjustifiable conduct of the other parent, the situation is governed by Tennessee Code Annotated section 36-6-223(a). As noted in our analysis, Daughter's presence in Tennessee was not the result of unjustifiable conduct.

-18-

Tennessee modification petition, and her stay in Tennessee did not constitute a "temporary absence" from Florida, we must conclude that, at the time the Tennessee custody proceedings commenced, Tennessee had home state jurisdiction to make an initial custody determination under the UCCJEA.[13]

### C. Tennessee Court's Decision to Decline or Exercise Jurisdiction

Because the Tennessee Court below held that it did not have jurisdiction to adjudicate Father's petition to modify the Florida parenting arrangement, it did not reach the third step in the *Staats* framework. "Once a court determines that it has subject matter jurisdiction under the first two steps of the jurisdictional analysis, it must then proceed to the third step and determine whether it may or must decline to exercise its modification jurisdiction on one of the three grounds specified in the UCCJEA. Tenn. Code Ann. §§ 36-6-221 to -223." *Id.* at 548, 552.

The *Staats* Court outlined the grounds on which a court may – or must – decline to exercise jurisdiction over a custody proceeding. First, "[t]he UCCJEA prohibits a court from exercising its jurisdiction to modify another state's child custody determination if a child custody proceeding has already been commenced in another state and has not been stayed or

---

[13]We observe that, even if Tennessee did not have home state jurisdiction to make an initial custody determination under Section 36-6-216(a)(1), it appears that no other state would have had home state jurisdiction at the commencement of these proceedings, and the child's primary connections were in Tennessee. However, we need not reach the issue of whether Tennessee had "significant connections" jurisdiction under Section 36-6-216(a)(2) because our conclusion on home state jurisdiction resolves the issue. Moreover, resolution of significant connections jurisdiction would likely require a remand to the trial court for the necessary factual findings.

terminated."[14] *Id.* at 552 (citing Section 36-6-221(a)). The UCCJEA defines the term "child custody proceeding" as follows:

> (4) "Child custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. "Child custody proceeding" includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. "Child custody proceeding" does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under part 3 of this chapter . . . .

---

[14]Tennessee Code Annotated § 36-6-221 provides:

> (a) Except as otherwise provided in § 36-6-219, a court of this state may not exercise its jurisdiction under this part if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under § 36-6-222.
>
> (b) Except as otherwise provided in § 36-6-219, a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to § 36-6-224. If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this part, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this part does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.
>
> (c) In a proceeding to modify a child custody determination, a court of this state shall determine whether a proceeding to enforce the determination has been commenced in another state. If a proceeding to enforce a child custody determination has been commenced in another state, the court may:
>
>> (1) Stay the proceeding for modification pending the entry of an order of a court of the other state enforcing, staying, denying, or dismissing the proceeding for enforcement;
>>
>> (2) Enjoin the parties from continuing with the proceeding for enforcement; or
>>
>> (3) Proceed with the modification under conditions it considers appropriate.

Tenn. Code Ann. § 36-6-221(a) (2010).

Tenn. Code Ann. § 36-6-205(4). ***Staats*** noted that this "bar applies only if the other state's jurisdiction conforms substantially to the jurisdictional requirements of the UCCJEA," and in this case Florida's jurisdictional statutes conform to the UCCJEA. Tenn. Code Ann. § 36-6-221(a). If a child custody proceeding is pending in another state, "[t]he modification court [here, Tennessee] is required to contact the other court and must dismiss the modification petition unless the other court determines that the modification court is a more convenient forum for resolving the custody dispute." Tenn. Code Ann. § 36-6-221(b). This provision is not applicable if the previously commenced foreign proceeding is an enforcement proceeding, because "[e]nforcement proceedings are expressly excluded from the statutory definition of a '[c]hild custody proceeding.'"[15] ***Staats***, 206 S.W.3d at 552-53.

In the instant case, the order of the Tennessee trial court that is the subject of this appeal does not indicate that the Tennessee Court explored the issue of whether there were any child custody proceedings pending in the Florida Court at the time Father filed his Tennessee petition. On appeal, Father contends that there were no child custody proceedings pending in the Florida Court at that time, but Mother maintains that some litigation was still pending in Florida. The record is not sufficient for the appellate court to make this determination, and it appears that the trial court did not address the issue in the first instance. Under these circumstances, we must remand the case to the Tennessee trial court below to make the factual determination on whether there were any "child custody proceedings" pending in the Florida Court at the time Father filed his modification petition in the Tennessee Court below. Once this factual finding is made, the Tennessee trial court will be in a position to decide whether it must decline to exercise its jurisdiction over Father's petition on this basis.

Under the UCCJEA, a modification court may decline jurisdiction "if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court." Tenn. Code Ann. § 36-6-222(a) (2010). The statute provides that, for the purpose of deciding whether it is more appropriate for another court to exercise jurisdiction, the trial court shall "allow the parties to submit information and shall consider all relevant factors," including the list of factors set out in the statute.[16] The statute directs: "If a court of this state determines that it is an inconvenient

---

[15]The UCCJEA contains separate provisions governing simultaneous modification and enforcement proceedings. ***See*** Tenn. Code Ann. §§ Tenn. Code Ann. § 36-6-221(c), 36-6-231.

[16]The factors to be considered are:

    (1) The length of time the child has resided outside this state;
    (2) The distance between the court in this state and the court in the state that would assume

(continued...)

forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper." *Id.* § 36-6-222(c).

Again, since the Tennessee trial court concluded that it did not have jurisdiction to modify the Florida parenting order, it did not consider the convenience to the parties of litigating in Tennessee. Consequently, we must remand for the Tennessee trial court to consider whether, in its discretion, it should decline to exercise jurisdiction over the case in light of the relative convenience to the parties.

Finally, under Section 36-6-223, a court may decline to exercise jurisdiction if the person who seeks to modify the foreign custody order has engaged in "unjustifiable conduct," except in certain circumstances.[17] In *Staats,* the appellate court found that the father's failure to

---

[16](...continued)
> jurisdiction;
> (3) The relative financial circumstances of the parties;
> (4) Any agreement of the parties as to which state should assume jurisdiction;
> (5) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
> (6) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;
> (7) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; and
> (8) The familiarity of the court of each state with the facts and issues in the pending litigation.

Tenn. Code Ann. § 36-6-222(b).

[17]Under this statute:

> (a) Except as otherwise provided in § 36-6-219, or by other law of this state, if a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:
>
> (1) The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
>
> (2) A court of the state otherwise having jurisdiction under §§ 36-6-216--36-6-218 determines that this state is a more appropriate forum under § 36-6-222; or
>
> (3) No court of any other state would have jurisdiction under the criteria specified in §§

(continued...)

-22-

immediately return the subject child to the mother was not "unjustifiable" within the meaning of Section 36-6-223, and that the father's act of filing a modification petition in Tennessee was not the type of conduct addressed by the provision. *Staats*, 206 S.W.3d at 556. In the instant case, the record on appeal does not indicate that Mother argued to the Tennessee trial court that it should decline to exercise jurisdiction under Section 36-6-223 because Father had engaged in "unjustifiable conduct." The only proof in the record is that Father pursued custody in the Tennessee courts rather than immediately returning Daughter to Mother's custody, and under the reasoning in *Staats*, this would not constitute unjustifiable conduct within the meaning of the statute.

In short, because the Tennessee trial court held that it did not have jurisdiction to adjudicate Father's petition to modify the Florida custody order, it did not take proof or consider whether it should or must decline jurisdiction over Father's custody modification petition under any of these statutory provisions. Therefore, we must remand for the trial court to exercise its discretion in accordance with the provisions of the UCCJEA in a manner consistent with this opinion. In doing so, if the trial court declines to exercise jurisdiction over Father's custody modification petition, it is directed to identify the statutory basis for doing so and give specific reasons for its decision, including any factual findings on which its decision is based.

## Post-Judgment Facts

Shortly before oral argument in this appeal, Mother filed a motion in this Court to include post-judgment facts in our consideration of this appeal.[18] In her motion, she argued that

---

[17](...continued)
        36-6-216 – 36-6-218.

Tenn. Code Ann. § 36-6-223(a) (2010).

[18]Tennessee Rule of Appellate Procedure 14 provides:

> (a) Power to Consider Post-Judgment Facts. The Supreme Court, Court of Appeals, and Court of Criminal Appeals on its motion or on motion of a party may consider facts concerning the action that occurred after judgment. Consideration of such facts lies in the discretion of the appellate court. While neither controlling nor fully measuring the court's discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters. Nothing in this rule shall be construed as a substitute for or limitation on relief from the judgment available

(continued...)

"there has been ongoing litigation in Florida regarding the terms of custody, visitation and support of the parties' child in Orange County, Florida." Mother attached to her motion several pleadings filed in the Florida Court, both before and after the trial court entered the order on appeal. We took the motion under advisement.

As discussed above, we have concluded that the Tennessee trial court erred in holding that it lacked jurisdiction over Father's petition, and that we must remand the case for the Tennessee trial court to determine whether it should decline to exercise jurisdiction. One of the factual issues the Tennessee trial court must consider in this context is whether there were child custody proceedings pending in Florida at the time Father filed his petition. Consequently, we need not consider the alleged post-judgment facts at this juncture, and so we deny Mother's motion.

One more note is in order. We recognize that "events and lives have not stood still while this custody dispute has been in the courts." *Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL 511451, at *4 (Tenn. Ct. App. July 21, 1999). On remand, the Tennessee trial court may, in its discretion, consider any legal proceedings in other states or any facts or evidence pertinent to its decision on whether to exercise jurisdiction over Father's petition to modify the parties' parenting arrangement.

## CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to the Appellee, Sarah Ann McClintock, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE

---

[18](...continued)
under the Tennessee Rules of Civil Procedure or the Post-Conviction Procedure Act.

Tenn. R. App. P. 14(a).

-24-